# Warden and Alexander *versus* Eichbaum.

1. Under the 34th section of the act of 24th February, 1834, relating to executors and administrators, in order to divest the interest of heirs in real estate, by sheriff's sale, it is necessary to make them parties to the proceeding, even though the suit on which the sale took place was commenced against the administrator *before* that act was passed.   The case is not within the exception in the 70th section of that act.

2. A committee of a lunatic may maintain ejectment in his own name, to recover the possession of the real estate of the lunatic.

3. The receipt, by the committee of a lunatic, of purchase-money of the interest of a lunatic in real estate, illegally sold at sheriff's sale, will not estop a future committee of the lunatic from recovering the possession of the property, even though valuable improvements have been made upon it since the sale.

ERROR to the District Court of *Allegheny county.*

This was an action of ejectment, brought by Eichbaum, committee of the person and estate of Matilda Elliott, a lunatic, Elizabeth Elliott, and James Elliott, heirs of West Elliott, deceased, *v.* Warden and Alexander, for ninety-six acres of land in St. Clair township, Allegheny county, on which the village of Temperanceville is now laid out.

The plaintiffs claimed as heirs at law of West Elliott, father of Matilda, Elizabeth, and James; also as heirs at law of their brothers, Daniel and Joseph, who died intestate, without issue, after the death of their father.   West Elliott died seized of the land in dispute, the same being subject to a perpetual ground-rent of $150 per annum.   He died in July, 1828.

On 29th June, 1836, Matilda Elliott was by inquisition found to be a lunatic, with lucid intervals, and that she had been in the same state of mind for three years last past, and that she was entitled to the one undivided fourth part of her father's estate, &c., valued at $2600.   On the same day, Snowden was appointed committee of her person and estate.   He gave bond, &c.

The defendants claimed title to the property through a judicial sale, and that a considerable part of the proceeds of the sale were, through an audit, appropriated to the heirs of West Elliott, deceased, and their vendees, and that the defendants, on payment of the money, had taken releases and conveyances of their interest in the property, viz., from Elizabeth Elliott, from Crawford as

[Warden and Alexander *v.* Eichbaum.]

vendee of Joseph Elliott, from Dunlavy as vendee of James, from Harker as vendee of Daniel, and from Snowden as committee of Matilda Elliott, a release and conveyance of her interest.

It was alleged on their part that the land was well sold, &c., and that the share of Matilda was one undivided fifth part of the property at the time of the sale. The defendants have since laid out the village of Temperanceville on the property, sold lots, and a considerable number of houses and other improvements have been made on it.

The judicial proceeding under which they claimed was a suit by Snowden and wife, Daniel Elliott who sued by his guardian, and Mary Elliott who sued by her guardian against Daniel Frew, administrator of the estate of West Elliott. Summons in account render. Writ issued December 24, 1833; served. December 13, 1834, judgment for one hundred and one dollars.

On this judgment a *fi. fa.* issued, on May 7th, 1835, and a levy made on all the right, title, and interest of West Elliott, deceased, in the property in question. A *venditioni exponas* issued July 19, 1835, and the property sold to Alexander, Warden, and Craft, for $5000. The sheriff returned *inter alia* that the purchasers have paid to the parties entitled to it the sum reported by the auditor to be due to them, except the amount appropriated to Daniel Elliott, amounting to $955.74, which I have now in court, subject to the order of the court.

The defendants proved that Matilda Elliott, by her committee, received her share of the proceeds of the sheriff's sale; and it was alleged that said committee by his acts and declarations ratified and consented to the sale, and stood by and saw valuable improvements made, and large sums of money expended, without giving notice of any claim on behalf of Matilda Elliott. They gave in evidence the release by said committee.

The plaintiffs contended that the sheriff's sale was void as to the heirs, they never having been made parties to the suit. West Elliott died July 29, 1828; suit was brought against his administrator, December 24, 1833; judgment was obtained, December 13, 1834; *fi. fa.* was issued May 7, 1835; levy made, inquisition, and condemnation; *venditioni exponas* was issued July 19, 1835; property sold November 23, 1835, to defendants, and the act of 24th February, 1834, went into effect *October* 1, 1834, which was some nine months after suit brought, and three months before the judgment was had.

Snowden was discharged as committee, &c. of Matilda Elliott, and Eichbaum was appointed committee of her person and estate. Snowden was the same person who was one of the plaintiffs in the suit on which the property was sold by the sheriff.

The court was requested by counsel of defendant to charge the jury:

[Warden and Alexander *v.* Eichbaum.]

1. That it was not necessary that the widow or heirs should be made parties, &c.

2. That the provisions of the thirty-fourth section of the act relating to executors and administrators, approved on the 24th day of February, 1834, were not applicable to the action on which this judgment was obtained, &c.

3. That Eichbaum, the plaintiff, was not entitled to recover, not having shown any title.

4. That if Matilda Elliott is a party to this suit, yet she will be estopped from recovering, if the jury are satisfied that her committee has received her share of the proceeds, &c., and by his acts and declarations ratified and consented to the same, &c.

5. That if the jury find the facts, as stated in the fourth point, then at least her committee would be estopped from a recovery, and that before suit the money received from the sale must be refunded or tendered.

The seventieth section of the act of 24th February, 1834, relating to executors and administrators, contains these words : " This act shall take effect from and after the first day of October next, and all such acts of Assembly as are hereby altered or supplied shall be and are hereby repealed, except so far as may be necessary to finish proceedings commenced," &c.

His Honor, Judge HEPBURN, answered the first and second points in the negative, but they were reserved for further consideration, and the negative answer given then *pro forma*.   The other points were answered in the negative.

Verdict was rendered for Eichbaum, committee of the person and estate of Matilda Elliott, for the one undivided fifth part of the lands claimed in the writ, subject to the opinion of the court upon the point reserved, and for the defendants for the residue of the land claimed.

February 2, 1850.   Judgment on the reserved point in favor of plaintiffs.

It was assigned for error :

The court erred in not charging the jury as requested by the defendants in their first, second, third, fourth, and fifth points, respectively, and in the answer they gave to each of said points.

The case was argued by *Woods*, for plaintiffs in error.—He contended, *inter alia*, that the case was within the exception in the seventieth section of the act of 24th February, 1834; that the proceedings were commenced before the passage of the act.

*Eyster* and *Dunlop*, for defendant in error.

The opinion of the court was delivered by

BELL, J.——If any regard be due to legislative enactment and judicial decision, it is impossible to perceive how the plaintiffs in error can hope to evade the consequences resulting from the disregard of the statutory provision, calling for notice to heirs or devisees before lands descended or devised can be taken in execution for the debts of a decedent. The act of 1834 is imperative that "in all actions against the executors or administrators of a decedent, who shall have left real estate, when the plaintiff intends to charge such real estate with the payment of his debt, the widow and heirs or devisees, and the guardians of such as are minors, shall be made parties thereto." In Benner *v.* Phillips, 9 *Watts & Serg.* 13, this direction was held to be applicable to the estates of those who had died before it went into operation, and in Keenan *v.* Gibson, 9 *Barr* 249, it was ruled to be operative even where a suit was brought and a judgment recovered against the personal representative of the deceased before the passage of the act. In these cases, the court spoke, in general terms, of the observance of it as necessary to the continuance of lien against the land descended, without particularly adverting to it as an essential regulation irrespective of mere question of lien. The reason was, that though the leading inquiry was the privilege of the terre-tenants, the right of the respective creditors to levy on the descended lands was presented in intimate connection with the subject of lien, and as this was gone, in both instances, by lapse of time, before execution issued, we were not led to discriminate between the absence of lien and the simple invalidity of sale. But in Atherton *v.* Atherton, 2 *Barr* 112, where the lien of the debt due from the intestate was conceded to be in full effect, at the time of the levy made, under a judgment recovered against the administrator, the levy was, nevertheless, set aside, for the sole reason that the prior right of the creditor to take the land in execution was absolutely suspended by the statute until the owners were brought into court by legal process. In that instance, the point presented for adjudication was the naked right to take in execution unmixed with any doubt of lien. Such, too, is the inquiry in the case before us, for at the time of sale, in 1835, the lien of the debt for which the judgment was recovered against the administrator was, undoubtedly, unspent. It falls, therefore, directly under the ruling in Atherton *v.* Atherton, as well as the doctrine of the other cases, unless, indeed, there be something in the attempted distinction resting on the fact that the original action against Elliott's administrators was pending when the act of 1834 went into effect. Having been commenced and proceeded in under the prior existing laws, it is insisted the action fell within the operation of the seventieth section of the new act, which exempted from repeal the former laws "so far as may be necessary to finish proceedings commenced, or to settle the

[Warden and Alexander *v.* Eichbaum.]

estates of persons who may have died before that time." The same objection was raised in Keenan *v.* Gibson, but it was answered, that admitting the exception in the repealing clause had reference to suits at law brought by creditors, the proceeding was finished, within the meaning of the statute, by the recovery of a judgment. There, the rendition of the judgment was before the new enactment; here, it was after; a fact which, certainly, cannot be appealed to as conferring any superior privilege or immunity. Why should it? The act directs that after the first of October, then next, the lands of a decedent should not be taken in execution for his debts, before calling in the terre-tenants. The suit instituted before that time was not consummated by a judgment till after. Had the creditor intended to pursue the personal assets in the hands of the administrator, it might be said the proceeding remained unfinished until execution satisfied. But as no such intent was entertained, the recovery of a judgment against an administrator alone must be regarded as the closing step of that action. When the plaintiff elected to pursue the land, a distinct proceeding pointing in a new direction became necessary, as was very clearly shown in Atherton *v.* Atherton, following in this particular Murphy's Appeal, 8 *Watts & Serg.* 171. It is true, these decisions were not pronounced until some time after the sheriff's sale of the land here in question. Yet they are but declaratory of the true meaning of the act which gives rise to this contest. The plaintiff in the execution may have been ignorant of the proper steps to be taken, and this ignorance may entail hardship on those who purchased, giving full credence to the regularity of his proceedings. But it is scarcely necessary to say such considerations are insufficient to justify disregard of a positive law, which for every practical purpose must be deemed as known to all liable to be affected by it. Indeed, it is somewhat difficult to believe the parties interested in the transaction acted under the misapprehension that the statute did not embrace the case. At first blush, some hesitancy might have been felt as to the mode of giving effect to its provisions. But it seems to me, this very difficulty would naturally direct to the employment of the writ of *scire facias*, so familiar in our practice for similar purposes; or if a literal compliance with the terms of the act was deemed essential, the expedient of another action could not have been overlooked. I know the latter course was adopted in several instances in the district where I practised, by discontinuing suits, pending when the act of 1834 went into effect.

But abandoning this branch of the case, the plaintiffs in error insist that by receiving the lunatic's share of the purchase money, and permitting, without objection, large improvements to be made by the purchasers, the committee ratified the sheriff's sale, and is now estopped to call it into question, either in his own person, or

[Warden and Alexander *v.* Eichbaum.]

as representing the lunatic. This position is, I presume, based upon the principle applied in Adlum *v.* Yard, 1 *Rawle* 163; Stroble *v.* Smith, 8 *Watts* 280; Wilson *v.* Bigger, 7 *Watts & Serg.* 111, and other cases; that one who knowingly derives a benefit under an invalid deed, or a voidable transaction, cannot afterwards impeach it. And it would, perhaps, have been german here, had Matilda Elliott, being of full age and sound mind, with a full knowledge of all the facts, received her proportion of the avails of the sale, and suffered the vendee to improve without warning. But by what rule is she answerable for the acts or omissions of her committee? He was vested with no right to compromise her interest, nor clothed with power to alienate her estate. In Wilson *v.* Bigger, though the guardian of a minor ward had actively approved of the sale of the ward's estate, by an order of the Orphans' Court, the confirmation of the proceeding was not put upon that ground, but upon the subsequent acquiesence of the ward, after he had attained his majority. The relation of a committee to the lunatic's estate is strictly analagous. Though the law casts upon him the possession of it, it is, solely, for her benefit, and for the promotion of her welfare. The only way in which he can effect an alienation of her lands, is through the interposition of the proper Court of Common Pleas, and then only when the exigencies contemplated by the act of Assembly in that behalf occur. But it is suggested that as he might have dispensed with a *scire facias* on behalf of the lunatic, so he may waive any irregularity in the sale, for want of one. This is the same proposition as that just discussed, slightly modified. The answer is, that, as a general rule, a committee can waive nothing which the law stipulates for security of the party represented, and, particularly, in that relating to the freehold of the latter. But were this otherwise, in an ordinary case, it could never be permitted to one who is, at the same time, committee, and plaintiff in the execution under which the land is sold, to dispense with, as committee, what the law requires of him as party. This would be, frequently, to array interest against duty; a rivalry too menacing of the interests of the dependent person, to be hazarded. The very case before us seems to offer an illustration of the results to be apprehended from an admission of the principle contended for. A property worth, at least, $5000, and which within a few years has quintupled in value, was sold by the sheriff to satisfy a judgment for $101, the only encumbrance upon it. Every thing may have been fairly done, and the releases executed by the other parties in interest would seem to indicate such was the fact; but yet the facilities afforded for the practice of fraud are apparent, and admonish us that safety is only to be found in adherence to the requirements of a wholesome statute. The conclusion may affect the defendants below harshly, but the maxim *caveat emptor*, if it be sometimes a stern, is always a necessary one.

[Warden and Alexander *v.* Eichbaum.]

The remaining exception is that this action is incorrectly brought in the name of the committee.

By the 14th section of the act of 1836, the court on the return of an inquisition ascertaining the lunacy of a party, is directed to commit the custody and care of the person and estate of the lunatic to suitable persons; and by the 20th section, the committee of the estate is vested with the management of the real and personal property of the lunatic, and the disposition of the income thereof, for the benefit of the lunatic and his family.   The other provisions of the statute, regulating the subject, are in consonance with these, and all of them are borrowed from the rules and practice which obtain in the English chancery, in the exercise of this branch of its jurisdiction.   Both statute and practice regard the committee as in the actual possession of the lunatic's estate, which, indeed, is essential to the due discharge of his office.   Now, in Pennsylvania, to sustain the action of ejectment, it is only necessary to show the plaintiff has the right of possession, against the defendant.   Most frequently, this right is established by the exhibition of a legal title to the land itself, but this is by no means essential.   A present right of possession may exist independently of the legal estate, and this right may be vindicated in ejectment.   Thus, with us, a *cestui que trust,* or the holder of a merely inchoate interest, may maintain it; and a mortgagor, who has but an equity of redemption, in legal contemplation, may, by means of it, oust a trespasser.   For the same reason, it seems to us, the plaintiff may avail himself of this action to recover the possession the law awards to him, *ex officio.*   It is not like a personal action, which must be prosecuted in the names of committee and lunatic.   There, as it is said, the former must be joined, to manage the interests of one who is unable to protect himself, and the latter, because he may recover his understanding, and will be entitled not only to the beneficial interest in, but to the management of the judgment recovered: Beale *v.* Coon, 2 *Watts* 183.   But in ejectment, the sole object of the judgment rendered is to transfer the possession, which, of course, enures to the benefit of the lunatic, whether he be restored to his mental capacity or not.   The action is, therefore, well enough brought, though, doubtless, it might also have been correctly instituted in the name of the lunatic, as owner.

Judgment affirmed.