### Jennings, Appellant, v. Bloomfield.

*Vendor and vendee—Notice of unrecorded deed—Oil lease.*

A purchaser of land having notice of a prior unrecorded deed from the vendor will not be permitted to set up his title against a prior conveyance. A recital in a deed is notice to a purchaser of the fact recited. If the recital is an "oil lease," the vendee must be held to notice of a prior grant of the right to the oil in the land purchased by him.

*Lunacy—Declaration by committee—Unrecorded deed—Notice.*

The mere declaration by the committee of a lunatic that the lunatic has no interest in the land conveyed to him by an unrecorded deed, cannot operate to deprive the lunatic of his interest in the land in favor of a subsequent purchaser to whom the declaration was made.

Argued Oct. 10, 1900. Appeal, No. 25, Oct. T., 1900, by plaintiffs, from judgment of C. P. Forest Co., May T., 1899, No. 19, on verdict for defendant, in case of H. J. Jennings, Committee of J. B. Jennings, v. W. J. Bloomfield, E. Pequig-

not, A. J. Carnahan and M. S. Carnahan. Before McCol-
lum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and
Potter, JJ. Affirmed.

Ejectment for land in Harmony township.

The facts are stated in the opinion of the Supreme Court.

The plaintiff presented the following point:

8. Under all the evidence, the verdict of the jury will be in
favor of the plaintiff. *Answer :* Refused.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* among others was answer to above point, quot-
ing it.

*W. E. Rice*, with him *W. D. Hinckley*, for appellant.—The
defendants took title charged with full notice of all the rights
of James B. Jennings to one half of the oil in the premises: 2
Sugden on Vendors & Purchasers (8th Am. ed.), *755; Cres-
son v. Miller, 2 Watts, 272; McCray v. Clark, 82 Pa. 457;
Garrard v. Pittsburg, etc., R. R. Co., 29 Pa. 154; Kellogg v.
Smith, 26 N. Y. 18.

Where an instrument in the chain of title refers to some other
instrument as affecting the rights of the parties all persons
claiming through that chain of title will be affected with notice
of the contents of the instrument referred to though it is not
recorded : Ætna Life Ins. Co. v. Bishop, 69 Iowa, 645 ; Baker v.
Mather, 25 Mich. 51 ; Dunham v. Dey, 15 Johns. (N. Y.) 556;
Central Trust Co. v. Wabash, etc., Ry. Co., 29 Fed. Repr. 546 ;
Fellows et al. v. Loomis, 170 Pa. 415.

*D. I. Ball*, for appellees, cited Dorsey's App., 72 Pa. 192.

Opinion by Mr. Chief Justice McCollum, May 28, 1901 :

On June 15, 1871, Edward Jones, who was the owner in fee
of some forty-six acres of land in Harmony township, Forest
county, granted and conveyed one half of all the oil and min-
erals in the tract to James B. Jennings. The deed to Jennings
was not recorded until January 31, 1899. Meanwhile, on No-
vember 5, 1876, Jones conveyed his entire interest in the tract
to Sarah M. Frisbie, " subject however to certain leases, for oil

and other purposes given at different times by the aforesaid Edward Jones." On June 29, 1881, Sarah M. Frisbie and her husband conveyed the same land to Helen Peterson, and on July 6, 1893, Helen Peterson and her husband conveyed it to W. J. Bloomfield, the defendant. Both deeds contained the following clause: "This deed is subject to the oil lease given by Edward Jones to James B. Jennings." The three last named conveyances were all recorded prior to the recording of the deed from Jones to Jennings.

When Bloomfield purchased the land in question from Mrs. Peterson, she and her husband resided in the state of Washington, where the deed was executed by them. She was represented in the sale by one Samuel H. Haslet of Tionesta, to whom the deed was sent. Haslet submitted it to the purchaser, Bloomfield, who declined to accept it, because it contained the clause relating to an oil lease to James B. Jennings. Thereupon Haslet wrote two letters to Jennings requesting him to release the oil right. But prior to the receipt of these letters Jennings had been judicially declared a lunatic, and his son, H. J. Jennings, had been appointed committee of his estate. Haslet's second letter was received by H. J. Jennings who immediately replied. The reply was sent by Haslet to Bloomfield, and was presumably destroyed in the burning of the latter's house, which has since occurred. Bloomfield then accepted the deed, without further inquiry and H. J. Jennings, as committee of James B. Jennings, now brings this action of ejectment against him, claiming title to one half of the oil and minerals in the tract, under the original deed from Edward Jones. Upon the trial there was a conflict of testimony as to the contents of the letter from H. J. Jennings to Haslet. Jennings produced and gave in evidence what he testified was a copy of the letter, reading as follows: "Tidioute, Pa., June 26th, 1894. S. H. Haslet. Dear Sir: Yours received and contents noted. My father was taken with the grip about two years ago and his mind became deranged, so at present he is away from home receiving treatment. You can see about how it is. And the contents of your letter is something that I don't know much about, but will try and look up. Yours respectfully, H. J. Jennings." On the other hand Haslet testified that the letter stated that Mr. Jennings did not claim any rights there at all,

and that his father was at Warren in the asylum.   The defendant, Bloomfield, also testified that the substance of the letter was that J. B. Jennings was not competent to do business; that H. J. Jennings had authority to do business for the estate, and that they had no valid claim on the property in question that would need to hinder the witness from going on and getting his title all right and clear.

The trial judge declined to give binding instructions for the plaintiff and submitted to the jury two questions, first, whether the alleged copy of the letter produced by H. J. Jennings was an actual copy of the letter sent, and, second, whether Bloomfield, being put upon inquiry as to the interest of James B. Jennings, by the recital in his deed, had made reasonably diligent inquiry or not.   The jury found a verdict for the defendants.

The rule is well established that a purchaser of land having notice of a prior unrecorded deed from his vendor will not be permitted to set up his title against the prior conveyance: McCray v. Clark, 82 Pa. 457.  A recital in a deed is notice to a purchaser of the fact recited: Boggs v. Varner, 6 W. & S. 469; Hancock v. McAvoy, 151 Pa. 439; Gibson v. Winslow, 46 Pa. 380; McKee v. Perchment, 69 Pa. 342.   Therefore, if the deed to Bloomfield had recited an unrecorded deed to Jennings, it would have carried notice to the purchaser of the existence of such deed.   But the actual recital is of an " oil lease," not of a deed, and it is contended that this fact alters the case, as both in common language and in technical application there is a marked difference between a lease and a deed.   Oil is a mineral, however, as has been expressly held in Blakely et al. v. Marshall, 174 Pa. 425, and Marshall v. Mellon, 179 Pa. 371, and numerous other cases.   In the former case Mr. Chief Justice STERRETT said: " An oil lease investing the lessee with the right to remove all the oil in place in the premises, is in legal effect a sale of a portion of the land."   To the same effect are Kier v. Peterson, 41 Pa. 357; and Stoughton's Appeal, 88 Pa. 198.   Notice of an oil lease therefore amounts to notice of a sale of the oil in place.   It can make no difference that the technical " deed " is not used in the recital.   The purchaser must be held to notice of a prior grant of the right to the oil in the land purchased by him.   The recital in his deed was at least

notice of an outstanding interest in James B. Jennings sufficient to put the purchaser upon inquiry. The learned trial judge thus held, and submitted the question whether the defendant had made reasonable inquiry or not. Was this question properly submitted? It may be conceded that if James B. Jennings had been compos mentis, and upon inquiry having been made of him by the defendant, or his agent, he had disclaimed title to the property, he would now be estopped from setting up his unrecorded deed against the defendant. Does a similar declaration by his committee have the same effect? Or in other words has the committee of a lunatic the power to deprive the lunatic of any portion of his estate by such a declaration? The powers of a committee are limited by the provisions of the act of assembly authorizing his appointment: Kennedy v. Johnston, 65 Pa. 451. On page 455 of the case above cited Judge AGNEW said: " When properly qualified the law confers on the committee the management of the real and personal estate of the lunatic with power to apply the income only to the payment of his debts and the support of himself and his family. But beyond this the committee cannot go in disposing of the estate without the aid or sanction of the court. If the income be insufficient the principal cannot be used, or the real estate converted without the direction of the court." In Shaffer v. List, 114 Pa. 486, Justice STERRETT at page 489, said: " The lunatic is in effect the ward of the court and his estate is in custodia legis. The committee is the mere bailiff or servant of the court, and as such is subject to its direction in everything that pertains to the management of the lunatic's estate, and the maintenance of him and his family."

In Warden v. Eichbaum, 14 Pa. 121, it was sought to estop the committee of a lunatic's estate from recovering in ejectment for an interest in property which had been illegally sold at sheriff's sale by reason of the receipt by a former committee of the purchase money arising from the illegal sale. The court in an opinion by Mr. Justice BELL, concedes that if the lunatic had been of full age and sound mind and had received her proportion of the avails of the sale, and suffered the vendee to improve it without warning, she would be estopped. " But," says the court, on page 126, " by what rule is she answerable for the acts or omission of her committee? He was vested with no right

to compromise her interest nor clothed with power to alienate her estate. In Wilson v. Bigger, 7 W. & S. 111, though the guardian of a minor ward had actually approved of the sale of the ward's estate by an order of orphans' court, the confirmation of the proceedings was not put upon that ground but upon the subsequent acquiescence of the ward after he had attained his majority. The relation of a committee to a lunatic's estate is strictly analogous. Though the law casts upon him the possession of it, it is solely for her benefit and the promotion of her welfare. The only way in which he can effect an alienation of her lands is through the interposition of the proper court of common pleas, and then only when the exigencies contemplated by the act of assembly in that behalf occur. But it is suggested that as he might have dispensed with a scire facias on behalf of the lunatic, so he may waive any irregularity in the sale for want of one. This is the same proposition as that just discussed, slightly modified. The answer is that, as a general rule, a committee can waive nothing which the law stipulates for security of the party represented, and particularly in that relation to the freehold of the latter." The case just quoted is cited with approval in Bennett v. Hayden, 145 Pa. 595.

Without further citation of authorities it is apparent that no declarations or admissions of the committee could affect the rights of the lunatic, or divest any portion of his estate. The court was therefore in error in submitting the case to the jury. The plaintiff's eighth point requesting binding instructions should have been affirmed.

The judgment entered for the defendants is reversed and judgment is now entered herein for the plaintiff, as committee of J. B. Jennings.