TEXAS COMPANY v. W. H. DAUGHERTY ET AL.

No. 2637. Decided May 21, 1915.

**1.—Taxation—Real Property—Franchise.**

The mere franchise or privilege to devote land to a certain use, as to appropriate oil and gas discovered thereon, is taxable against the owner of the fee and its value is to be included in the assessment of the land. Rev. Stats., art. 7504; State v. Austin & N. W. Ry. Co., 94 Texas, 530. (P. 232.)

**2.—Same—Oil and Gas—Separation from Title in Fee by Conveyance.**

Oil and gas within the ground are minerals and a part of the realty, and a conveyance of them in that condition, as distinguished from a mere grant of the right to search for and appropriate them, passes an interest in the realty, taxable as such in the hands of the grantee. (Pp. 234-239.)

**3.—Same—Case Stated.**

The owner of land, for a valuable cash consideration and certain stipulated royalties, granted to another "all the oil, gas, coal, and other minerals in and under" it, with rights to enter and mine for same, and habendum clause to him, his heirs, successors and assigns forever, reciting that this was not intended as a mere franchise but as a conveyance of the property, but conditioning it upon commencing drilling operations within one year or a quarterly payment of rent in lieu thereof, and providing for royalties to the grantor on the oil, etc., produced. Held, that this conveyed a defeasible title in fee to the oil and gas in the ground, taxable as an interest in the land owned by the grantee. (Pp. 231-241.)

**4.—Conveyance—Condition Subsequent.**

A fee in land may pass by deed upon a condition subsequent to the same extent as though the condition did not exist, subject to the contingency of being defeated according to the condition. (P. 234.)

**5.—Oil and Gas—Ownership in Soil.**

The fact that oil and gas, from their fluid and fugitive character while in the ground, are capable of escaping from its owner or of being drawn off by an adjoining proprietor, while qualifying the title in them held by the owner of the soil, does not prevent them from being treated as minerals and a part of the realty, capable as such of transfer and separate ownership, the purchaser assuming the risk of reducing them to possession and absolute ownership. Authorities on subject reviewed. Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 292, followed. National Oil & P. L. Co. v. Teel, 95 Texas, 586; O'Neil v. Sun Co., 123 S. W., 172; Witherspoon v. Staley, 156 S. W., 556, distinguished. (Pp. 234-241.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Wichita County.

Action was brought by the Texas Company against Daugherty and others, and judgment for defendant affirmed on its appeal, whereupon it obtained writ of error.

*Robert A. John, Jas. L. Autrey, Mathis & Key,* and *Theodore Mack,* for plaintiff in error.—By their very nature oil and gas are fugitive substances, and the owner of the land having a fee title thereto, has nevertheless no title to the oil and gas in situ. Burnham v. Hardy Oil Co., 147 S. W., 331; Nonamaker v. Amon, 4 L. R. A. (N. S.), 981; Gas Company v. Ullery, 68 Ohio St., 259, 67 N. E., 494; Federal Oil

Co. v. Western Oil Co., 112 Fed., 373; Federal Oil Co. v. Western Oil Co., 121 Fed., 674; Wagner v. Mallory, 41 App. Div. (N. Y.), 126, 62 N. E., 585; Watford Oil & Gas Co. v. Shipman, 84 N. E., 53; Thornton on Oil & Gas, sec. 24; Witherspoon v. Staley, 156 S. W., 557; Smith v. Guffey, 202 Fed., 106; People's Gas Co. v. Dean, 193 Fed., 938.

Oil and gas do not become private property until reduced to actual possession by one who has that right, and then by the severance of the same it becomes personal property and is not real property. Kelley v. Ohio Oil & Gas Co., 39 L. R. A., 765, and authorities heretofore cited.

An oil and gas lease, from the very nature of the subject matter, conveys to lessee or grantee no title to estate in the land or in the oil or gas thereunder, but only the right to explore and, if discovered, sever the oil or gas from said land. Emery v. League, 31 Texas Civ. App., 474, 72 S. W., 603; National Oil & Pipe Line Co. v. Teel, 67 S. W., 545; Roberts-Corley v. McFadden, 32 Texas Civ. App., 47, 74 S. W., 107; Hodges v. Brice, 32 Texas Civ. App., 358, 74 S. W., 590; Eclipse Oil Co. v. South Penn Oil Co., 47 W. Va., 84, 34 S. E., 923; Huggins v. Daley, 99 Fed., 606; Williams v. Triche, 107 La., 92, 31 So., 926; Federal Oil Co. v. Great Western Oil Co., 121 Fed., 674; Smith v. Root, 30 L. R. A. (N. S.), 176; Bettman v. Harness, 42 W. Va., 433, 26 S. E., 271; Parish Fork Oil Co. v. Bridgewater G. Co., 51 W. Va., 583, 42 S. E., 655; Smith v. Guffey, 202 Fed., 106; Witherspoon v. Staley, 156 S. W., 557.

Time being of the essence of the contract between applicant, as lessee, and its lessors, and applicant's rights being subject to forfeiture on failure of some condition not being performed, applicant had no title, legal or equitable, until every condition was performed. Douglass County v. Railway Co., 5 Kan., 623; Parker v. Winsor, 5 Kan., 373.

Each oil and gas lease under review in this suit is a franchise or the grant of a right and privilege to enter upon, explore and produce oil and gas, and is a chattel real. State v. Downman, 134 S. W., 787; Sanford's Appeal, 75 Conn., 590, 54 Atl., 739; Kansas Natural Gas Co. v. Neosho County, 89 Pac., 750; Bryan on Petroleum and Gas, sec. 33; Cyc., vol. 32, p. 668.

While the term "franchise" is sometimes used to signify all the property of a corporation, still in a strictly legal sense that term does not embrace property acquired by the existence of a franchise, so that if a franchise or privilege to explore for oil does not embrace the oil acquired by that franchise or privilege, then the franchise or privilege accruing to plaintiff in error by reason of the lease contract involved in this litigation is not taxable. 19 Cyc., p. 463; W. U. Tel. Co. v. Wright, 185 Fed., 253; California v. Railway Co., 127 U. S., 40, 41, 32 L. Ed., 150.

A chattel real or a privilege growing out of real estate, though of ascertainable value, is not subject to taxation unless made so by some legislative act. State v. Downman, 134 S. W., 787; Baker v. Panola County, 30 Texas, 91; Sanford's Appeal, 75 Conn., 590, 54 Atl., 739; Kansas Natural Gas Co. v. Neosho County, 89 Pac., 750; DeWitt v.

Hayes, 56 Am. Dec., 352; Willis v. Commonwealth, 34 S. E., 460; Hamilton Mfg. Co. v. Lowell, 185 Mass., 114, 69 N. E., 1080; Hancock County v. Imperial, etc., Co., 47 So., 177; Boreel v. New York, 2 Sandifer, 552; Close Springs Iron Wks. v. Gage, 56 Vt., 603; Ashe-Carson Co. v. State, 138 Ala., 108, 35 So., 38; Silva v. Hawn, 102 Pac., 952; Cyc., vol. 22, p. 668; in re Gray, 5 Mass., 419; Allender v. Sussan, 3 Am. Rep., 171; 2 Kent's Com., 342.

Taxation should be equal, uniform, and double taxation is against the reason and policy of the Constitution and statutes of the State. State v. Austin & N. W. Ry. Co., 94 Texas, 530, 62 S. W., 1050; Daugherty v. Thompson, 71 Texas, 192, 9 S. W., 99; Tel. & Tel. Co. v. Meerscheidt, 65 S. W., 381; State v. Louisiana & M. Ry. Co., 196 Mo., 523, 94 S. W., 279; Gillespie v. Gaston, 67 Texas, 599, 4 S. W., 248; Cyc., vol. 37, p. 752.

The lessor of real estate is the owner thereof, within the meaning of art. 7509, providing in substance, that all properties shall be rendered by the owner, and as between the lessor and lessee, when the lease contains no covenant of the payment of taxes, the lessor must bear the burden of the taxes on the leased estate. 1 Cooley on Taxation (3rd ed.), p. 731, also p. 822; E. T. V. & G. Ry. Co. v. Mayor, 35 S. W. (Tenn.), 771; Bettison v. Budd, 17 Ark., 546; Weichselbaum v. Curlett, 20 Kan., 709; People v. Barker, 153 N. Y., 98; State v. Bridge Co., 134 Mo., 321; Taylor, Landl. & Ten., sec. 341.

It can not be presumed that it was the intention of the Legislature to change the common law relations existing between the lessor and lessee, without a clear indication of such intent in the language of the statute. Therefore, since there is no clear intent expressed in chapter 11, title 126, of the R. S. of 1911, the courts are not permitted to legislate and thus bring about a change of the mutual relations and obligations existing between citizens of the State with respect to property, but on the contrary the Legislature in enacting chapter 11, title 126, must be presumed to have acted in view of the existing law regulating the rights and relations of lessor and lessee, and especially is this true since the Legislature in the same title has expressly provided for the taxation of leasehold interests in public lands, alone. Chap. 11, title 126, R. S., 1911; art. 7509, sec. 1; art. 7529; Jelton v. University of South, 208 U. S., 489, 52 L. Ed., 584, 589; Elder v. Wood, 208 U. S., 226, 52 L. Ed., 464; Wright v. Ga. Ry. & Banking Co., 216 U. S., 420, 54 L. Ed., 544; L. & N. Ry. Co. v. Wright, 199 Fed., 454.

Since art. 7518, R. S., 1911, secs. 8 and 9, provides for the rendering for taxation of the number of miles of railroad in a county, and the value of the railroad and appurtenances, and sec. 42 provides for the rendering of every franchise, and the respective value thereof, it must be assumed that the Legislature used the term "franchise" not to convey the idea of a lease, or a privilege, but rather in the sense of a grant of right by public authority, which permits the doing of something which otherwise the grantee would not have a right to do. Railway Co. v.

Mayor (Tenn.), 35 S. W., 771-773; Western U. Tel. Co. v. Wright, 185 Fed., 250-253; 19 Cyc., pp. 451, et seq.; California v. Railway Co., 127 U. S., 40-41, 32 L. Ed., 150; L. & N. Ry. Co. v. Wright, 199 Fed., 454, and cases cited.

The long continued practice of the executive and legislative departments of Texas with reference to non-taxation of leasehold interests, except of public lands, ought to be treated as persuasive authority by the courts, and since the discovery of oil in the State of Texas, it having been the practice and policy of the executive department not to insist upon the taxation of leases such as are involved in this case, such fact and long continued acquiescence should be regarded as persuasive authority demonstrating the error of the court below in holding that the privileges accruing to plaintiff in error under its leases were subject to taxation. Temple Baptist Church v. Georgia Terminal Railroad Co., 128 Ga., 669. 58 S. E., 157-161; Louisville & Nashville Railway Co. v. Wright, 199 Fed., 454-459.

"Property" in a statute authorizing the imposition of taxes does not embrace undetermined claims for damages for lands taken by the public or as including a mere right to collect fees in the future or anything in the nature of a mere personal privilege. Therefore, since the right to the applicant to prospect for oil was in the nature of a personal privilege, that right is not "property" within the meaning of our laws upon the subject of taxation. 1 Cooley Taxation (3rd ed.), 645-648; San Francisco v. Anderson, 103 Cal., 69; People v. Feitner, 167 N. Y., 1; DeWitt v. Hays, 2 Cal., 463; Lowell v. Boston, 106 Mass., 540.

The oil and gas leases in question constitute a conditional option, license and permit subject to abandonment, surrender, forfeiture and other conditions. Emery v. League, 31 Texas Civ. App., 474, 72 S. W., 603; State v. Downman, 134 S. W., 787; Federal Oil Co. v. Great Western Oil Co., 121 S. W., 674; Smith v. Guffey, 202 Fed., 106.

The court will look to the entire instrument to determine its meaning. This instrument, viewed as a whole, is clearly a grant of an option, and not a conveyance of the mineral rights in the land. Witherspoon v. Staley, 156 S. W., 557; National Pipe Line Co. v. Teel, 68 S. W., 979; Emery v. League, 31 Texas Civil App., 474, 72 S. W., 603; Steelsmith v. Gartlan, 45 W. Va., 27, 29 S. E., 978; Huggins v. Daley, 99 Fed., 606; Florence Oil Co. v. Orman, 19 Colo. App., 79, 73 Pac., 628; 27 Cyc., p. 724.

Personal property as a general rule is situated where the owner resides, and under our statutes intangible personal property has its situs for the purpose of taxation at the residence of its owner, where the taxes are to be assessed and collected. Ferris v. Kemble, 75 Texas, 476; Connor v. City of Waxahachie, 13 S. W., 30; State v. A. & N. W. Ry. Co., 60 S. W., 886; Commonwealth v. Haggin (Ky.), 99 S. W., 906; Ogden v. City of St. Joseph, 90 Mo., 522, 3 S. W., 25; Kirk v. Western Oil & Gas Co. (Ky.), 37 S. W., 489; State v. Tennessee Coal & Iron Co., 92

Tenn., 295; 29 S. W., 116; Express Co. v. Auditor, 166 U. S., 185, 41 L. Ed., 965; Cyc., vol. 37, p. 947.

*D. Edward Greer, George C. Greer,* and *F. C. Proctor,* counsel for oil companies similarly interested, as *amici curiae,* by leave, filed brief in support of plaintiff in error and extended brief and argument in support of its motion for rehearing, which was overruled.

*B. F. Looney,* Attorney-General; *G. B. Smedley,* Assistant, and *Montgomery & Britain,* for defendants in error.—The oil leases in this case are conveyances of the oil in the land; and when the ownership of minerals in land is conveyed apart from the surface, the interest in the lands created by the conveyance is taxable against its owner as real estate. That oil in place is a mineral and susceptible of separate ownership from the ownership of the surface. Thornton on Oil and Gas, 2d ed., secs. 18, 19, 20; 27 Cyc., p. 629; So. Oil Co. v. Colquitt, 28 Texas Civ. App., 292, 69 S. W., 169; Cox v. Robison, 105 Texas, 426, 150 S. W., 1149; Murray v. Allred, 100 Tenn., 100, 43 S. W., 355, 39 L. R. A., 249, 66 L. R. A., 740; Kelley v. Ohio Oil Co., 570 S. W., 317, 39 L. R. A., 765, 63 L. R. A., 721; Wagner v. Mallory, 169 N. Y., 501, 62 N. E., 584; Ohio Oil Co. v. Indiana, 177 U. S., 190. That oil leases are a conveyance of the oil in place: Benevides v. Hunt, 79 Texas, 383; Staley & Barnsdall v. Durden, 121 S. W., 1136; Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 292, 69 S. W., 169; Gracioso Oil Co. v. Santa Barba. Oil (Cal.), 99 Pac., 483, 20 L. R. A. (N. S.), 211; Wolf Co. v. Beckett (Ky.), 105 S. W., 447, 17 L. R. A. (N. S.), 688; Harvey Coke and Coal Co. v. Dillon (W. Va.), 6 L. R. A. (N. S.), 628. That minerals in place, owned separately from the surface, are taxable against their owners: State v. Downman, 134 S. W., 787.

If the oil leases do not amount to conveyances of estates in land, but merely grant the right for a term of years to enter upon the land and take oil from it and so are chattels real, they are, nevertheless, taxable under the statutes of this State against their owner. Art. 8, sec. 1, Constitution of 1876; Revised Statutes, arts. 7503, 7504, 7506, 7509, and 7526; State v. Downman, 134 S. W., 787, 34 Sup. Ct. Rep., 62; Gracioso Oil Co. v. Santa Barba. Co. (Cal.), 99 Pac., 483, 20 L. R. A. (N. S.), 211; in re Assessment of the Indian Territory Illuminating Oil Co. (decided by the Supreme Court of Oklahoma, in March, 1914, and not yet reported); Harvey Coal & Coke Co. v. Dillon (W. Va.), 6 L. R. A. (N. S.), 628; Wolf Co. v. Beckett (Ky.), 105 S. W., 447, 17 L. R. A. (N. S.), 688.

The oil leases, even though they may be technically chattels real and personal property, have a fixed location in Wichita County, and are taxable there. Art. 8, sec. 11, Constitution of Texas; art. 7510, Revised Civil Statutes; City of Galveston v. J. M. Guffie Petroleum Co., 113 S. W., 585; State v. Higgins Oil & Fuel Co., 116 S. W., 617; Guarantee, etc., Ins. Co. v. City of Austin, 165 S. W., 53; in re Hall, 102 N. Y.

Supp., 5, 82 N. E., 1127; Paris v. Norway Water Co., 27 Atl., 143; Western Union Tel Co. v. Hopkins, 115 Pac., 557; Lake Cotton, etc., Co. v. Town of Gilford, 67 N. H., 337, 10 Atl., 849.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

The question presented by the case for decision is whether the interests or rights conferred upon The Texas Company in virtue of a number of so-called oil leases constituted property subject to taxation in its hands.

The instruments in question were respectively executed by owners of lands in Wichita County as grantors, duly acknowledged and recorded, the wife joining where the property constituted any part of a homestead. In each instance the grantor, by the terms of the instrument, "granted, bargained, sold and conveyed" to The Texas Company as grantee, "all the oil, gas, coal, and other minerals in and under" the particular tract of land, which was fully described, for a valuable consideration, consisting of a stated amount acknowledged to have been paid (in the particular lease shown in the record as a form and to which all of them substantially corresponded, one hundred dollars) and certain stipulated royalties, together with the exclusive right of ingress and egress at all times for the purpose of drilling, mining and operating for such minerals and the conduct of all operations, and the erection of appliances and structures in that connection, and for the laying of all pipe lines necessary for the production, mining, storing and transportation thereof, with the privilege of renewing and removing all such structures at will. Each instrument contained the following habendum clause:

"To have and to hold, all and singular, the above described premises, rights, properties and privileges, and all such as are hereinafter specified, under the said grantee, and the heirs, successors and assigns of such, forever, upon the following terms."

Under penalty of forfeiture of "the rights and estates hereby granted," it was provided that operations for the drilling of a well for oil or gas should be begun within one year from the time of the delivery of the instrument, the forfeiture to be saved, however, notwithstanding such operations should not be commenced within that period, by the payment by the grantee of twenty-five dollars per quarter for a period not exceeding three years; with the further provision that the conveyance should be in full effect for twenty years from the discovery of oil, gas or other minerals, and as much longer as they should be produced in paying quantities, in the event the grantee, or its successors or assigns, should sink a well or shaft and make such discovery within the limits of time, or the extension thereof, stipulated. A concluding clause in each instrument was as follows:

"This lease is not intended as a mere franchise, but is intended as a conveyance of the property and privileges above described for the purposes herein mentioned, and it is so understood by all parties hereto."

The owners of the fee of all the land described in the several so-called leases had rendered them for taxation for the current year at their fair

market value, subject to the rights and privileges conferred upon the grantee under such instruments. In assessing the value of the lands against the owners of the fee, their value as oil bearing, or prospective oil bearing, lands, as evidenced by the royalty interests of such owners, under the instruments, was considered, and taxes had been paid by such owners accordingly. In that valuation, however, the value of the rights and privileges conferred by these instruments upon the grantee therein, was not included. ·

The question is to be resolved, in our opinion, by the determination of whether the instruments involved conferred upon the plaintiff in error an interest in the lands therein respectively described. If their effect, at most, was but the creation in its favor of a mere franchise or privilege to devote the land to a certain use, with the usufructary right, as a part of its use and enjoyment, to appropriate a portion of such oil and gas as might be discovered, such franchise or privilege was taxable against the owner of the fee as a part of the land, just as any other such valuable right or privilege belonging to land is, unless otherwise distinctly provided by statute, so taxable under article 7504, which declares that "real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all the buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and *all the rights and privileges belonging or in anywise appertaining thereto,* and all mines, minerals, quarries and fossils in and under the same." The rights and privileges belonging to land contribute in a very substantial way to its value. They largely cause it to yield its income, and it is the theory of our statute, therefore, that their value shall be included in the valuation of the land for taxation in the hands of the owner. They do not escape taxation by this method; on the contrary, they are subjected to its burden through the inclusion of their value in the assessment of the land; and they are taxed against the owner of the land because the Legislature has deemed it proper for him to bear the charge in view of their essential contribution to its value. This is plainly the effect of the decision in The State v. Austin & Northwestern Railroad Company, 94 Texas, 530, 62 S. W., 1050, where, before the enactment of the statute providing for the taxation of intangible assets, attempt was made to tax the franchise of a railroad company separate from its real estate. After quoting present article 7504, Chief Justice Gaines, upon this question, said:

"It seems to us the plain purpose of the article last quoted to require that in assessing real estate for taxation, whether held by a natural person or a corporation, there shall not only be included in the valuation the value of the land itself merely as land together with the improvements thereon, but also all franchises and privileges appurtenant thereto and all the advantages for a profitable prosecution of the business to which it is appropriated. As a rule, the value of improved real estate is proportionate to the net income which it will yield. The value of a railroad is not the mere value of its right of way, road bed and superstructure,

its depot grounds and structures thereon, considered by themselves, but the value of all these as an operating, 'going concern,'—this value being in general determinable by the profits which result from its operation. The statute requires all property to be assessed 'at its true and full value,' and in effect defines that value to be what it would probably sell for at a voluntary sale for cash. Persons proposing to sell or buy a railroad, in forming their opinion as to its value, would doubtless consider the condition of its physical properties, but would ultimately reach their conclusion upon the question by a careful estimate of the probable net income which its operation will produce. There are no special 'rights and privileges belonging to or in anywise appertaining' to the great mass of the real property of the State, such as farming lands and town or city lots, but the terms are applicable to the real estate of railroad companies and suggest the thought that the Legislature had such property in mind when it inserted the provision, and that it was intended that in valuing a railroad for taxation the valuation should include every right and privilege which was exercised in producing its income, and that it was not intended to disassociate the soul from the body of the living concern and value by itself the lifeless remains."

We accordingly turn to an examination of the instruments for the purpose of determining their legal effect. It will be observed that they constitute no mere demise of the premises for a given period, as in the case of an ordinary leasehold. Nor do they amount simply to a grant of the right to prospect upon the land for oil or gas and reduce those substances to possession and ownership. They deal with the oil, gas, and other minerals "in and under" the land as property, in the ground, capable of ownership and subject to be conveyed, for, as such, in unmistakable terms they are "granted, sold and conveyed" to the grantee for a stated consideration acknowledged to have been paid, valuable in itself and independent of the royalties stipulated as payable to the grantor in the event of the discovery of such minerals, or any obligation imposed upon the grantee to explore for them. For the purpose of making the exploration and producing all the oil, gas and other minerals that might be within the ground, and the erection of all structures necessary thereto, as well as their storing and transportation, the possession of the land itself is likewise granted, with no limitation upon the number of wells or shafts that the grantee might sink, or the extent of its operations in that connection, and consequently no qualification of its right of possession to all such parts of the surface,—except that no well should be drilled nearer than 200 feet from the house or barn on the premises without the consent of both parties, as might be necessary to its full use by the grantee for the purposes named. The rights of the grantee are made subject to forfeiture if operations for the drilling of a well for oil or gas are not begun within one year from the delivery of the instrument, or if the payment of the amount provided in lieu of such commencement is not made; but the sinking of a well or shaft and the discovery of any of the minerals named, within the period of one

year or the extension thereof provided for, in each instance renders the instrument effective for twenty years and as much longer as such minerals shall be produced in paying quantities. This constituted the entire grant as one capable of indefinite duration.

While such is the evident effect of the instruments when looked at, as they should be, from their "four corners," the parties were plainly desirous of giving further emphasis to their character as "conveyances" of property as distinguished from a mere grant of a license or privilege. With the obvious intention of placing their construction beyond the pale of any doubt, they incorporated the provision already noted, that "this lease is not intended as a mere franchise, but is intended as a *conveyance of the property* and privileges above described for the purposes herein mentioned, and it is so understood by all the parties hereto."

It will be further noted that no condition is expressed or act required of the grantee which preceded the vesting of such estates as the instruments created. Upon penalty of forfeiture of "the rights and estates *hereby* granted," the grantee was required to begin operations for the drilling of a well for oil or gas within one year or pay a stipulated amount, quarterly, during the extension period provided; but it was the manifest purpose of the parties that the estate created should constitute a present grant, and that the grantee should perform these acts after taking possession, which rendered them conditions subsequent. A fee may pass by deed upon a condition subsequent to the same extent as though the condition did not exist, subject to the contingency of being defeated according to the condition. And here, if any property was conveyed, there was a present grant but liable to be defeated by the grantee's failure to perform the requirement in respect to beginning operations for the drilling of a well for oil or gas, or, in lieu thereof, making the quarterly payment provided. The grant amounted to a defeasible title in fee to the oil and gas in the ground, if oil and gas in place are capable of ownership and conveyance.

This brings us to the consideration of the latter question, and the contention of the plaintiff in error that these substances are incapable of ownership as property until severed or extracted from the ground, and that therefore these instruments conferred upon it no more than a mere use of the surface of the ground and the right to take them from it, amounting only to a privilege belonging to the land and taxable as a part of it against the owner of the fee, but vesting it with the title to no property whatever. It may be remarked, we think, with propriety, that this position is in marked contrast with the solemn assertion of the instruments themselves, exhibited in the record by means of a common form evidently prepared by the plaintiff in error for use in its business operations, that they were not intended as "mere franchises," but as "conveyances of the property and privileges described, and were so understood by all parties thereto." However, we pass over that to the determination of the naked question.

It is no longer doubted that oil and gas within the ground are min-

erals. They have peculiar attributes not common to other minerals because of their fugitive nature or vagrant habit,—the disposition to wander or percolate, and the possibility of their escape from beneath one part of the surface of the earth to another. Nevertheless, they are to be classed as minerals. Thornton on Oil and Gas, sec. 18; Murray v. Allred, 100 Tenn., 100, 39 L. R. A., 249, 66 Am. St., 740, 43 S. W., 355; Stoughton's Appeal, 88 Pa. St., 198; The People v. Bell, 237 Ill., 332, 19 L. R. A. (N. S.), 746, 15 Ann. Cases, 511, 86 N. E., 593. In place, they lie within the strata of the earth; and necessarily are a part of the realty. Being a part of the realty while in place, it would seem to logically follow that whenever they are conveyed while in that condition or possessing that status, a conveyance of an interest in the realty results. It is generally conceded that for the purpose of ownership and conveyance of solid minerals the earth may be divided horizontally as well as vertically, and that title to the surface may rest in one person and title to the strata beneath the surface containing such minerals in another. Because of the fugitive nature of oil and gas, some courts, emphasizing the doctrine that they are incapable of absolute ownership until captured and reduced to possession and analogizing their ownership to that of things *ferae naturae,* have made a distinction between their conveyance while in place and that of other minerals, holding that it created no interest in the realty. But it is difficult to perceive a substantial ground for the distinction. A purchaser of them within the ground assumes the hazard of their absence through the possibility of their escape from beneath that particular tract of land, and, of course, if they are not discovered the conveyance is of no effect; just as the purchaser of solid mineral within the ground incurs the risk of its absence and therefore a futile venture. But let it be supposed that they have not escaped, and are in repose within the strata beneath the particular tract and capable of possession by appropriation from it. There they clearly constitute a part of the realty. Is the possibility of their escape to render them while in place incapable of conveyance, or is their ownership while in that condition, with the exclusive right to take them from the land, anything less than ownership of an interest in the land? Conceding that they are fluent in their nature and may depart from the land before brought into absolute possession, will it be denied that so long as they have not departed they are a part of the land? Or when conveyed in their natural state and they are in fact beneath the particular tract, that their grant amounts to an interest in the land? The opposing argument is founded entirely upon their peculiar property and, therefore, the risk of their escape. But how does that possibility alter the character of the property interest which they constitute while in place beneath the land? The argument ignores the equal possibility of their presence, and that the parties have contracted upon the latter assumption; that if they are in place beneath the tract, they are essentially a part of the realty, and their grant, therefore, while in that condition, if effectual at all, is a grant of an interest in the realty. In

other words, the question, it seems to us, reduces itself to this: .If the oil and gas, the subject of the conveyance, are in fact not beneath or within the land and are therefore not capable of being reduced to possession, the conveyance is of no effect. But if they have not departed and are beneath .it, they are there as a part of the realty; and their conveyance while in place; if the instrument be given any effect, is consequently the conveyance of an interest in the realty. There could be no warrant for denying effect to such instruments as .these, and, granting them effect, they are therefore to be considered as conveyances of such an interest.

The possibility of the escape of the oil and gas from beneath the land before being finally brought within actual control may be recognized, as may also their incapability of absolute ownership, in the sense of positive possession, until so subjected. But nevertheless, while they are in the ground they constitute a property interest. If so, what is the nature of it in the hands of the original owner? It embraces necessarily the privilege or right to take them from the ground. But is that its extent, or sole character? While they lie within the ground as a part of the realty, is the ownership of the realty to be denominated, as to them, a mere license to appropriate, as distinguished from an absolute property right in the .corpus of the land? With the land itself capable of absolute ownership, everything within it in the nature of a mineral is likewise capable of ownership so long as it constitutes a part of it. If these minerals are a part of the realty while in place, as undoubtedly they are, upon what principle can the ownership of the property interest which they constitute while they are beneath or within the land, be other than the ownership of an interest in the realty?

We are not dealing with conveyances of simply the right to take the oil and gas from the ground. These instruments purported to be a grant of the oil and gas themselves in the ground. If while in place they constituted an interest in the realty, that interest was subject to sale and conveyance, the purchaser assuming the risk of reducing them to possession. The instruments throughout treat these minerals in the ground as property, and bespeak the purpose to give the grantee absolute dominion over them, not merely when severed from the realty and reduced to personalty, but while in their natural state; and the interest granted was furthermore expressed as one capable of being assigned and conveyed by the grantee. There was imposed no limit upon the grantee's right to the oil and gas, save as to the royalty payable to the grantor; it could take them out to any extent, at all times, and from beneath any part of the land, with the single limitation that no well should be drilled nearer than 200 feet from the house or barn on the premises except by the grantor's consent. Such a vested interest in the minerals in the ground, forming in their natural state a part of the land, with absolute dominion over them while in that state, and with the further unlimited right to their appropriation, plainly constitute property and all that is

recognized in proprietorship, and equally amount to an interest in the land itself.

As pointed out in Ohio Oil Company v. Indiana, 177 U. S., 190, 44 L. Ed., 729, 20 Sup. Ct., 576, the analogy between deposits of oil and gas and things *ferae naturae* is, at best, a limited one. The difference between them is that things *ferae naturae* are public property and all have an equal right to reduce them to possession and ownership; while the right to the oil and gas beneath his land is an exclusive and private property right in the land owner, inhering in virtue of his proprietorship of the land, and of which he may not be deprived without a taking of private property.

While there is a conflict of authority upon the question we have discussed, the views expressed are believed to be amply sustained. In Thornton on Oil and Gas, a standard work upon the subject, in section 19 it is said:

"Oil and gas, until severed from the realty, are as much a part of it as coal or stone. So long as they remain in the ground, outside of an artificial receptacle at least, as the casing of a well or pipe line, they must be treated as a part of the realty underneath the surface of which they lie. So much so are they a part of the realty, as we shall repeatedly see hereafter, that a conveyance of them in their natural state in the earth requires all the formalities of a conveyance of any other interest in the same real estate."

Again in section 20 of the same work, this is announced:

"The owner of the surface is the owner of the gas and oil beneath it; but if they escape into the land of another he ceases to be owner of them. They are the subject of grant or conveyance, just as much so as the grant or conveyance of coal or stone buried in the soil of the same tract of land."

In Gould on Waters, section 291, it is stated:

"Petroleum oil, like subterranean water, is included in the comprehensive idea which the law attaches to the word land, and will be protected as a part of the soil in which it is found. Like water it is not the subject of property except while in actual occupancy, and a grant of either water or oil is not a grant of the soil or of anything for which ejectment will lie. The same is true of natural gas. A lease of land for the purposes of mining oil, coal, rock, or carbon oil passes a corporeal interest which is the proper subject of an action of ejectment, and a proportionate share of the oil to be produced by an oil well is an interest in land, a parol sale of which is void under the statute of fraud."

In Stoughton's Appeal, 88 Penn. St., 198, after adverting to the classification of oil as a mineral and its therefore being a part of the realty, the Supreme Court of Pennsylvania said:

"In this it is like coal or any other natural product which *in situ* forms part of the land. It may become, by severance, personalty or there may be a right to use or take it originating in custom or prescrip-

tion, as the right of a life tenant to work opened mines or to use timber for repairing buildings or fences on a farm, or for fire bote. Nevertheless, whenever conveyance is made of it, whether that conveyance be called a lease or deed, it is, in effect, the grant of part of the corpus of the estate and not of a mere incorporeal right."

In Blakeley et al. v. Marshall, 174 Pa. St., 425, 34 Atl., 564, the same court held:

"An oil lease, investing the lessee with the right to remove all the oil in place, in the premises in consideration of his giving the lessors a certain per centum thereof, is in legal effect a sale of a portion of the land and the proceeds represent the respective interests of the lessors in the premises."

To the same effect is Jennings v. Bloomfield, 199 Pa. St., 638, 49 Atl., 135.

In Heller v. Dailey, 28 Ind. App., 555, 62 N. E., 490, a case which involved an oil and gas contract not materially different from the instruments in this case, and which purported to convey the oil and gas in place under a particular tract of land, the court, while fully recognizing the doctrine which forms the basis of the contention here of the plaintiff in error, that the absolute ownership of these minerals does not exist until they are reduced to actual possession, said:

"The oil and gas in their free and natural state within the land constitute a part of it, though they be fluent and liable to depart to other land, there to be taken into possession through wells made for such purpose. The right to take such minerals from the land constitutes an interest in the land. The instrument under consideration does not create a mere personal privilege to take the minerals from the land. It is an exclusive and assignable interest in land. If with propriety it can be called a license, it must be a license coupled with an interest in land. By its terms the contract is a grant of the minerals in and under the land. If by such general terms all of a specified solid mineral, as coal, in and under the land were granted it would be a grant of real estate; but because of the fluidity and fugitiveness of petroleum and natural gas the absolute ownership of these mineral substances within the land can not be acquired without reducing them to actual control; so that a distinction must be and is made between these elusive minerals in and under the ground and the solid minerals in place in the earth. Therefore a grant of all the oil and gas in and under a tract of land is not a grant of any particular specific substance as would be the grant of the coal in and under certain land. . . . While for reasons which we have sought to state, we do not regard the contract in suit as a grant of land, or as a lease properly so called, but do regard it as a grant of a right in the nature of an incorporeal hereditament, operative from the time of its execution, and during the accomplishment of its purpose as a transfer of an exclusive right to search for, take and appropriate the minerals mentioned in the instrument, under whatever technical com-

mon law term it may most properly be classed, it must be held to be a conveyance of an interest in land within the meaning of our statutes."

Williamson v. Jones, 39 West Va., 231, 25 L. R. A., 222, 19 S. E., 436, affirms the same rule, it being remarked with respect to these minerals that it is only when they escape out of the possession of the owner that the right of property is gone. Wilson v. Hughes, by the same court, reported in 43 W. Va., 826, 39 L. R. A., 292, 28 S. E., 781, announces a like holding. It is contended by the plaintiff in error that Wilson v. Hughes has been in effect overruled by the Supreme Court of West Virginia in the later case of Harvey Coal & Coke Co. v. Dillon, 59 W. Va., 605, 53 S. E., 928, 6 L. R. A. (N. S.), 628, and such may be the operation of the latter decision, though it is not in terms so stated. It is to be remarked, however, that the instrument considered in the Dillon case granted merely the right to mine certain minerals without purporting to convey the minerals themselves in place, and this characteristic is more than once emphasized by the court in its opinion. Prior to the decision in the Dillon case, the same court had decided, State v. Low, 46 W. Va., 451, 33 S. E., 271, a case not adverted to in the Dillon opinion. There a conveyance of the oil and gas in place in a tract of land, of the same character as embodied in these instruments, was reviewed for the purpose of determining whether it created an interest in land which was subject to taxation against the grantees. It was held that the conveyance amounted to a defeasible title in fee to the oil and gas, taxable against the grantees as an interest in the land.

The Supreme Court of Illinois adheres to the view that these minerals in place are not capable of distinct ownership, and that a conveyance of them is not a grant of the minerals themselves in the ground, but to such part thereof as the grantee may find. Watford Oil & Gas Co. v. Shipman, 233 Ill., 9, 122 Am. St., 144, 84 N. E., 53. Yet the same court has held that such a conveyance, with the right to go upon the land and occupy it for the purpose of prospecting, if of unlimited duration, or if such right, under the terms of the lease, is capable of having unlimited duration, amounts to a grant of a freehold interest in the land. Watford Oil & Gas Co. v. Shipman; Bruner v. Hicks, 230 Ill., 536, 120 Am. St., 332, 82 N. E., 888. In The People v. Bell, 237 Ill., 332, 19 L. R. A. (N. S.), 746, 15 Ann. Cases, 511, 86 N. E. 593, the question was directly involved of whether the rights created by such a conveyance amounted to an interest taxable as land against the grantee, separate from the fee taxable against its owner. The conveyance there was of the oil and gas under a certain tract of land, for the consideration of the payment of a royalty to the grantors, the premises to be held for one year, and so long thereafter as oil or gas might be found thereon in paying quantities, constituting, as is the case in the instruments before us, a term capable of unlimited duration. In that state by statute such a mining right (as it is there classed) is taxable separately. The statute, however, did not undertake to define the property classification of such a right, whether it constituted personal property or

an interest in land. The named question, therefore, of the character of the property right was necessary to be determined. The court held that the conveyance amounted to the grant of a freehold interest, which should be assessed and taxed as real estate against the grantees. See also Guffey v. Smith, 237 U. S., 101, 35 U. S. Ct. Rep., 527, decided April 5, 1915. According to these decisions it is immaterial whether there is any such thing as absolute ownership of oil and gas in place. They plainly announce that the conveyance of such minerals in place, with a right to the use of the land for their extraction from the earth which may prove, under the instrument, of unlimited duration, creates a freehold interest in the land itself; and the last named decision as clearly rules that such interest is taxable as realty and against the person who owns and may enjoy it.

It is assumed in the argument that because of the decision of this court in Oil & Pipe Line Co. v. Teel, 95 Texas, 586, 68 S. W., 979, and its refusal of writs of error in the cases of O'Neil v. Sun Co., 123 S. W., 172, and Witherspoon v. Staley, 156 S. W., 556, it is committed to the proposition that oil and gas in place are not susceptible of grant and their conveyance creates no property interest in the land, but only a bare right or privilege to go on the land and mine for such minerals and reduce them to possession. The case of Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 292, 69 S. W., 169, involved the question of whether the proper joinder of the wife was necessary in a conveyance of such minerals in place under a tract constituting a homestead, together with the right to make use of the land for the purpose of their production from the earth. The Court of Civil Appeals for the Fifth District held that it was for the reason that such a conveyance amounted to the grant of an interest in the land itself. This court refused writ of error. It could have done so only under the view that the interest created by the instrument was an interest in the realty itself, requiring for its validity the joinder of the wife because of the homestead character of the realty. In O'Neil v. Sun Company the question was the right of the Sun Company to oil from a well bored upon a tract to which it held a clear and unforfeited right under a lease. The Court of Civil Appeals for the Fourth District held that the instrument, though it purported to grant and convey the title to the oil and gas under the land, only conferred a right to exploit the ground and acquire title to the oil by its extraction from it. Under the facts of the case it was manifest that the Sun Company was entitled to the oil, whatever might be the technical classification of its right. There are essential elements of difference between the contract considered in that case and the instruments here under review. It possessed all of the characteristics of a contract for exploitation, with the right to take the oil and gas in the ground, with such right depending upon the company's performance of the contract. Here the instruments express a present grant of the minerals in place for a consideration which was valuable and independent of any obligation resting upon the grantee, emphasized by the parties as a conveyance of property

and not the grant of a mere franchise by a distinct provision asserting such to be its character. The same distinction exists with respect to the instrument considered in Witherspoon v. Staley, as well as that reviewed in Oil & Pipe Line Co. v. Teel. In the former case the Court of Civil Appeals held that a forfeiture of the right created under the contract had clearly accrued. We concurred in that view and upon that ground refused the writ of error. In Oil & Pipe Line Co. v. Teel the contract was supported by only a nominal consideration other than the mere promise of the lessee to perform certain acts, but for the performance of which he was not bound. The contract was construed properly as the creation of a mere option which permitted the acquisition of an interest on performance of conditions—a mere optional right to acquire an interest in land, a character of instrument plainly distinguishable from those here presented.

It is our conclusion that these instruments had the effect to confer upon the plaintiff in error an interest in the several tracts of land described, the value of which was assessable against it for taxation. The judgments of the District Court and Court of Civil Appeals are therefore affirmed.

*Affirmed.*

Appellant's motion for rehearing in this case was overruled June 24, 1916.