KEY v. BIG SANDY OIL & GAS DEVELOPMENT CO. et al. (No. 9149.)

(Court of Civil Appeals of Texas. Ft. Worth. March 22, 1919. Rehearing Denied May 17, 1919.)

1. MINES AND MINERALS ☞55(3)—OIL LEASE —CONSTRUCTION.

Instrument executed by the owner of supposed oil land and designated as an oil lease *held* a conveyance of the mineral rights in the land subject to defeasance for failure to pay the rentals as stipulated, and subject to the further contingency of termination after expiration of a five-year period by failure to discover the minerals mentioned in paying quantities, and failure to exercise ordinary diligence after discovery to mine same.

2. MINES AND MINERALS ☞74—OIL LEASE— AGREEMENT BY LESSOR — BINDING FORCE UPON PURCHASER AND HIS LESSEE.

The agreement by the lessor of supposed oil land that the well drilled by the lessee company to a depth of 2,000 feet was a complete well within the meaning of the lease was binding upon her and upon the buyer from her, who bought the land ¡with full notice of the construction of the lease, and also upon·the buyer's lessee, who took his lease with notice of the same fact.

3. MINES AND MINERALS ☞75—OIL LEASE— CONTINUATION — PAYMENT OF CONSIDERATION.

The $500 paid by the lessee of supposed oil land in addition to a full performance by his assignee of the drilling contract stipulated in the lease *held* a full payment of the consideration required for continuation of the lease for the five-year period stipulated in it.

4. MINES AND MINERALS ☞78(1)—OIL LEASE —PERFORMANCE OF CONTRACTUAL CONSIDERATION.

The contractual consideration of a five-year oil lease having been fully performed by the lessee by drilling a well, the lessee was under no obligation to drill another well in order to hold the lease for the five-year period.

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Suit by George D. Key against the Big Sandy Oil & Gas Development Company and others. From an order dissolving temporary writ of injunction, plaintiff appeals. Affirmed.

Marshall Spoonts, of Ft. Worth, and Earl Conner, of Eastland, for appellant.

J. J. Butts, of Cisco, and C. L. McCartney, of Brownwood, for appellees.

DUNKLIN, J. George D. Key has appealed from an order of the judge of the district court of Eastland county, dissolving a temporary writ of injunction theretofore issued, restraining the Big Sandy Oil & Gas Development Company, a private corporation, and John Leonard and T. K. Simmons, from drilling an oil well on a tract of 2,840 acres of land situated in Eastland county.

At the time of the institution of the suit by Key, the defendant Simmons was making preparations to put down a test well for oil, and was claiming the right so to do under and by virtue of what is commonly known as an oil and gas lease, dated December 9, 1914, executed by Mrs. Willie Scarborough to Herbert Lane, who transferred all his interest therein to the defendant company, and which in turn assigned the lease to Simmons. The lease contained the following stipulations:

"The lessors in consideration of $500, the receipt whereof is hereby acknowledged, do hereby grant, demise and let unto the said lessee all the oil, gas, gold, silver, lead and zinc in and under the following described land with covenant for the lessee's quiet enjoyment from the title and that lessor has the right to convey the premises to the said lessee. * * *

"To have and to hold unto and for the use of lessee for the term of five years from the date hereof and as much longer as gas, oil, gold, silver, coal, lead, or zinc is produced in paying quantities. Royalty to the lessors Willie Scarborough and her assigns ⅛ of all the oil pro-

duced and saved from the premises, delivered free of expense into the tanks or pipe lines to the lessors' credit. Should a well be found producing gas only then the lessor shall be paid for each well the sum of $100 for each year as long as gas is sold therefrom payable quarterly when so marketed.

"Lessee agrees to complete a well on said premises within one year from date hereof or pay lessor Willie Scarborough or her assigns 25 cents an acre per annum payable quarterly from the 9th day of December, 1915, until said well is completed or this lease surrendered, which surrender is made complete and binding upon failure of lessee to make such payment. And the drilling of such well shall be full consideration to lessor for grant herein made to lessee with exclusive right to drill one or more additional wells on said premises during the existence of the lease."

After the execution of the lease, Mrs. Scarborough, who then owned the fee-simple title to the land, conveyed that title to E. J. Ward, who purchased the land with full notice of the lease, which had been duly recorded in the deed records of Eastland county. On October 17, 1918, Ward executed an oil and gas lease on the land to plaintiff, George D. Key, upon the supposition that the lease theretofore executed to Herbert Lane had lapsed and was no longer of any legal effect.

The record before us contains a statement of facts showing the evidence introduced upon the hearing of defendant's motion to dissolve the temporary writ of injunction. The evidence so introduced established without controversy the following facts, additional to those already cited above: After Herbert Lane transferred the lease to the Big Sandy Oil & Gas Development Company, that company began drilling a well on the land for oil, and the well was drilled to a depth of 2,000 feet prior to December 9, 1915. The discovery of oil had been expected at a depth of 1,700 or 1,800 feet, and after the depth of 2,000 feet had been reached Mrs. Scarborough agreed with the defendant company that the well had been completed within the meaning of the terms and conditions of the lease, and that the entire consideration for the lease for the full period of five years from and after December 4, 1914, had been paid. However, the company concluded to drill the well deeper, and with the consent of Mrs. Scarborough did sink it to a depth of 2,500 feet, but no oil or gas was found even at that depth. The company expended about $40,000 in drilling the well. During the summer of 1916 the derrick and machinery was moved off the land, and no further drilling was done thereon.

The deed from Mrs. Scarborough to E. J. Ward was not made until after the company had ceased drilling operations, and at the time Ward purchased the land he had notice of Mrs. Scarborough's agreement with th.

defendant company that the well had been completed in compliance with the terms of her lease to Herbert Lane; the plaintiff, Key, had notice of the same facts at the time he leased the land from Ward.

The only two grounds alleged in plaintiff's petition for avoiding the lease to Herbert Lane which are brought forward in appellant's briefs are: First, that the lease was made for the benefit of the lessor, and as there has been no production of oil, Ward, as assignee, of the lessor, was entitled to again lease the land for the purpose of developing oil thereon, in the absence of proper diligence on the part of the original lessee or his assignees to further test the land for the discovery of oil; second, that the original lease had been abandoned by the lessee and his assignees by reason of the fact that, after making an unsuccessful attempt to discover oil, the machinery had been moved off the land, and no further attempt had been made to develop oil thereon.

As shown by the facts already stated, the five-year period stipulated in the lease to Herbert Lane will not expire until the 9th day of December, 1919. The defendant Simmons acquired his lease from the Big Sandy Oil & Gas Development Company on October 8, 1918, and he was preparing to begin the drilling of a well on the land on December 14, 1918, when he was prevented from so doing by the temporary writ of injunction issued in this cause, sued out by the plaintiff.

[1] It cannot be doubted that the instrument executed by Mrs. Scarborough to Herbert Lane, and designated as an oil lease, was a conveyance of the mineral rights in the land subject to defeasance for failure to either drill a well or pay the rentals stipulated in the lease, and subject to the further contingency of a termination of such title after the expiration of the five-year period mentioned in the lease, by failure to discover the minerals mentioned in the lease in paying quantities, and failure to exercise ordinary diligence after such discovery to mine the same. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989.

[2] The agreement of the lessee to "complete the well" might be said to be ambiguous, but Mrs. Scarborough and the oil company that drilled the well agreed upon the meaning of that term, and the agreement by Mrs. Scarborough that the well drilled to a depth of 2,000 feet was a complete well within the meaning of the terms of the lease was binding upon her and upon Ward, who bought the land with full notice of that construction of the lease by his vendor, and also upon Key, who took his lease with notice of the same fact. Heidenheimer v. Cleveland, 17 S. W. 524, and authorities there cited.

[3, 4] Herbert Lane paid $500 for the lease

at the time he acquired it. That consideration, in addition to a full performance of the drilling contract stipulated in the lease, was a full payment of the consideration for a continuation of the lease for the period of five years ending December 9, 1919. The contractual consideration for drilling having been fully performed the lessee was ·under no obligation to drill another well in order to hold the lease for the five-year period. O'Neil v. Sun Co., 58 Tex. Civ. App. 167, 123 S.· W. 174; Great Western Oil Co. v. Carpenter, 43 Tex. Civ. App. 229, 95 S. W. 59. Since the consideration for the exclusive right to develop oil on the land for the full period of five years had been fully paid, the owner of the title cannot be heard to complain that the lessee did not drill another well within the five-year period as a further consideration for the lease for that period.

Under such circumstances we are unable to perceive how the question of abandonment of the lease could arise, in the absence of any plea of innocent purchaser or any supposable facts upon which to base such a plea. Furthermore, according to the testimony of Key himself, prior to his lease from Ward, he had notice from Herbert Lane that defendant company was still claiming rights under the original lease.

For the reasons indicated the judgment of the trial court is affirmed.