

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
ATTORNEY GENERAL

Honorable Sam G. Reams
County Attorney
Brooks County
Falfurrias, Texas

Dear Mr. Reams:

Opinion No. 0-6073
Re: Liability for ad valorem tax
on mineral interest.

You request the opinion of this Department upon the question contained in your letter of June 6, reading as follows:

"I am enclosing herewith a certified copy of the contract between Florence Arnold East and Standard Oil Company of Texas, which shows the interests of the parties thereto in and to the mineral rights of certain land, therein described, in Brooks County, Texas.

"The Brooks County Tax Collector and Assessor has in the past, for tax purposes, assessed Mrs. East with an 1/8th interest in and to the mineral rights and has assessed the Standard Oil Company of Texas with the remaining interest in and to the minerals.

"Mrs. East now maintains that she owns no interest in such mineral rights but has sold it to Standard Oil Co. for the consideration of a certain amount of money to be paid by Standard Oil Co. out of the proceeds when and if production is obtained. On the other hand the Standard Oil Company contends that Mrs. East owns an overriding royalty in and to the minerals and is consequently liable for her portion of the taxes.

"We would appreciate your opinion as to whether Mrs. East is liable for any taxes on this mineral interest."

To be considered in connection with our opinion you also submit a copy of an agreement between the Standard Oil Company of Texas, the present holder of certain leases, and Mrs. Florence Arnold East, joined pro forma by her husband, Ed H. East, assignors of said leases. We do not consider it necessary for the purpose of this opinion to analyze this agreement in detail. It is sufficient to say that its apparent purpose was to bring the matter down to date as between the parties presently interested insofar as applicable to the operation of the leases and the amounts and methods of payment from the operation thereof. It seems clear that this agreement was not intended to

and has not accomplished the purpose of divesting Mrs. East of her mineral interest. Oil payments as provided in the agreement may result in a reduction of the value of her mineral interest from time to time, but we do not construe such payments to be merely a discharge of the purchase price of a determinable fee in the minerals considered only in the light of providing a method of security for the payment of the purchase price of such mineral interest. We make no effort to apportion or designate the past or present mineral interest owned by the Standard Oil Company and Mrs. East arising under their past or present agreements; but this in the light of our holding may be more easily done by the parties themselves and the officials charged under the law with the assessment and collection of the taxes due by them upon their respective interest, as such interest exists on the 1st day of January of the year or years in question.

With the foregoing statement as a premise we proceed to state what we consider to be the law pertinent to your inquiry. That a mineral interest constitutes an interest in realty subject to taxation as such has been so long and definitely settled in this State we hardly deem it necessary to cite authority. Such has undoubtedly been the settled law of this State since the case of Texas Co. v. Daugherty, (Supreme Court) 176 S.W. 717. It makes no difference whether such mineral interest arises by a direct grant or by a reservation, the result is the same. State v. Quintana Petroleum Co., (Supreme Court) 133 S. W. (2d) 112.

In this latter case the Supreme Court, through Judge Smedley, Commissioner, held that the holder and owner of an oil payment owned an interest in land, subject to ad valorem taxes, to the extent of the fair market value thereof; that the usual one-eighth oil and gas royalty reserved in most leases is an interest in land, also subject to ad valorem tax, this for the reason that it is a right and a privilege belonging or appertaining thereto, as defined in Article 7146, R. C. S., 1925, reading as follows:

"Real property for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

In addition to the two items specifically mentioned above, namely, the one-eighth royalty usually retained by the lessor (which we use for convenience, and of course it may be more or less according to the contract of the parties), and the reservation of an oil payment out of production, if such is provided for in the lease in addition to, and separate and apart from the usual royalty, both accruing to the benefit of the lessor or his assigns, and which constitutes a taxable interest in land against the lessor or his assigns, there is also the usual leasehold estate or the working interest of seven-eights (more or less, according to the contract of the parties) owing by the lessee, which is likewise a taxable interest in land against the lessee or his assigns.

There, of course, arises the problem of the valuation of these respective interests for taxation under Article 7174, R. C. S. of 1925. Judge Smedley in the case of State v. Quintana Petroleum Co., supra, has given us a valuable guide in the following language:

"It is provided in substance by Article 7174, Revised Civil Statutes of 1925, that real property, or an interest in real property, shall be valued for taxation at what it is fairly worth in money or at such price as it would bring at a fair voluntary sale for cash. It is apparent that, where there is substantial production, as here, the right to a part of the minerals as they are produced, subject to the limitation that the right ceases when a certain sum has been realized from the proceeds thereof, is not of as great value as would be the right to an equal part of the minerals not subject to limitation; and it is further apparent that the value of the lessor's right or interest so limited, assuming continued production, will decrease each year. These facts must be taken into consideration in valuing such interest for taxation. Likewise it is apparent that the leasehold estate under this lease has a greater value on account of the limitation imposed upon the reserved 7/32 interest, with the provision that upon the termination of title under the reservation the 7/32 shall vest in the lessee, than it would have if the 7/32 interest had been reserved without limitation; and it is further apparent, still assuming continued production, that the leasehold estate will become more valuable each year as the time approaches when the 7/32 interest will vest in the lessee. And these facts must be taken into consideration in valuing the leasehold estate for taxation. When this method of valuing the property is used no part of the 7/32 of the minerals escapes taxation. Its value for taxation is represented by the valuation placed upon the lessor's reserved and limited 7/32 interest, together with the increased valuation placed upon the leasehold estate by reason of the limitation and the provision for the vesting of the interest in the lessee upon the satisfaction of the limitation.

"The record discloses that when rendering the leasehold estate in the four thousand acres for taxation for 1936, Quintana Petroleum Company in its written rendition, after the description of the land, thus described the leasehold estate: 'The above being the leasehold estate covering 20/32 of minerals.' This rendition seems to indicate that the taxpayer voluntarily undertook to exclude from its rendition both the 1/8 royalty interest and the 7/32 of the minerals as if the 7/32 interest, like the 1/8 royalty interest, were owned by the lessor without the limitation and without the provision for the vesting of the 7/32 in the lessee upon the satisfaction of the limitation. (Quintana Petroleum Company had theretofore assigned interests aggregating 1/32 out of its leasehold estate). The owner of the leasehold estate has not only the right to take and dispose of 20/32 of the minerals, but he is at the same time and presently the owner of the additional right to have, take and dispose of 7/32 of the minerals

upon termination of the lessor's right thereto under the reservation. Such additional right, even though it may be, as we believe it is, an integral part of the lessee's property, may not escape taxation by the taxpayer's voluntary exclusion thereof from his rendition sheet. Victory v. Hinson, 129 Tex. 30, 102 S. W. 2d 194. If such additional right was in fact excluded by the lessee in making its rendition, it may be assessed for taxation at its fair value in the manner provided by the statutes."

Having reached the conclusion, as we have, that the agreement submitted by you does not have the effect to completely divest Mrs. East of all mineral interest in the land involved, and thus relieve her of liability for the payment of taxes thereon because no longer the owner of any interest therein, it follows that we are of the opinion that the Standard Oil Company and Mrs. East should render their respective mineral interests for taxation, as provided in Article 7174, supra, their respective interests to be determined by such changes in values as result from the application and operation of the provision of the agreement with respect to oil payments provided in the agreement as and when actually made, keeping in mind that the value as of January 1 shall constitute the legal basis for their respective renditions.

This we hope will serve as a fair interpretation of what we conceive to be the law applicable to the question presented by you.

Yours very truly

APPROVED JUL 7, 1944                    ATTORNEY GENERAL OF TEXAS

/s/ Geo. P. Blackburn

(Acting) ATTORNEY GENERAL OF TEXAS      By  /s/ L. P. Lollar
                                            L. P. Lollar
                                            Assistant

LPL:AMM:LM

APPROVED
OPINION
COMMITTEE
BY /s/ BWB
CHAIRMAN

OK
/s/ GPB