## DUNBAR ROYALTY CO. v. SHIPP.
### No. 5672.

Court of Civil Appeals of Texas. Texarkana.
Nov. 14, 1941.

Pat J. Howe and Henry Yeager, both of Dallas, for appellant.

Wellborn & Wellborn and Frank C. Bolton, all of Henderson, for appellee.

HALL, Justice.

This suit was instituted in the District Court of Rusk County by appellee against Dunbar Royalty Company, G. M. Rowe, and several other persons not parties to this appeal, in which appellee alleged that theretofore he purchased from appellant, Dunbar Royalty Company, an undivided ⅛ mineral interest in and under approximately 142 acres of land located in Rusk County. It was alleged further that the ⅛ interest purchased from Dunbar Royalty Company amounted to 17.32 royalty acres, but in fact Dunbar Royalty Company owned only 5.93 royalty acres in said land; that the title had failed to the difference between the royalty sold and that actually owned by Dunbar Royalty Company for which damages were sought in the amount of $11,390, and in the alternative for $4,200, representing the purchase price of the alleged shortage in acreage together with legal interest from date of purchase. The Dunbar Royalty Company is the only appellant here and it will be so designated hereafter.

Appellant answered to the merits denying failure of the title to any part of the royalty sold by it to appellee, and alleged further that if it be determined that it and its grantors conveyed more royalty than they owned and by reason thereof the title to a part failed, then it averred that the superior title was, "on all the dates of all the deeds which were executed and delivered" in appellee, or his predecessors in title, and that appellee's remedy, if any existed, was for the return of the purchase price "by virtue of mistake of fact." Appellant alleges, further, that since appellee has received in cash more than he paid for the royalty interest, he has not been damaged to any extent.

Upon motion by appellee the court below peremptorily instructed the jury to return a verdict in his favor for the sum of $3,426.63.

Appellant's propositions 1 and 2 are:

"No. 1: Plaintiff Shipp having predicated his title failure case on the theory that the children and grandchildren of Sam Williams conveyed to Rowe more than they had, was incumbent upon Shipp to prove that old man Sam Williams, Maria Pierce Williams, his first wife, Robert Williams, a son, Cordia Williams, a daughter, all of whom are dead, each and all died without a will, and that all titles acquired were acquired by descent and distribution from these decedents, and having failed to introduce any evidence on this vital link in the chain of title, Shipp failed to prove what title Rowe's grantors had or didn't have which could have failed and the instructed verdict for Shipp and against Dunbar Royalty Company was material reversible error."

"No. 2: Plaintiff Shipp having failed to prove an ouster, or a judicial determination of title failure, or an outstanding superior title, or how, when, where or why the title failed, or how much of the title failed, it was material reversible error for the trial court to instruct the jury in favor of Shipp and against the Dunbar Royalty Company."

These propositions are so related that they will be treated together. No evidence was offered by appellant. Its contention is that appellee wholly failed to establish his cause of action for the reasons urged in the propositions set out above.. The mineral interest here in controversy was part of the estate of Sam Williams, Sr., and his first wife, Mariah, both deceased, and consisted of two tracts of land aggregating 141.85 acres. On August 22, 1935, appellant by mineral deed regular on its face purported to convey to appellee an undivided $\frac{1}{8}$ mineral interest in and under the 141.85-acre tract. Appellant purchased the mineral interest it conveyed to appellee from one G. M. Rowe, and Rowe had theretofore purchased it from some of the heirs of Sam Williams, Sr., and his first wife, Mariah. The testimony of Ida Williams, surviving wife of Robert Williams, deceased, son of Sam Williams, Sr., and his first wife, Mariah, designates the children of Sam Williams, Sr., by both his first wife, Mariah, and his third wife, Josie, and their consequent heirship. She also testified that there were no children by Sam Williams, Sr., and his second wife,

Rose. In a final judgment of the District Court of Rusk County in suit No. 9055, dated November 27, 1933, between the heirs and surviving wife of Sam Williams, Sr., the Humble Oil & Refining Company, claiming the leasehold, and the several claimants to the royalty, it was decreed, among other things, that the heirs of Sam Williams, Sr., and his wife, Mariah, took their estate by inheritance; that the 141.85-acre tract was the community property of Sam Williams, Sr., and his first wife, Mariah, and that upon the death of Mariah, her undivided $\frac{1}{2}$ interest in all said land passed by descent to her only surviving heirs, two of whom were Robert Williams, deceased, and Fannie Oten; and that Josie, the surviving wife of Sam Williams, Sr., took a life estate in an undivided $\frac{1}{3}$ of said tract of land. From this undisputed evidence the share each heir is entitled to receive of said estate is easily deducible. On December 31, 1930, Olivia, Ora Mariah, Fannie Mae, and Aaron, all the children of Robert Williams, deceased, joined by Ida, surviving wife of Robert, conveyed to G. M. Rowe $\frac{1}{16}$ of $\frac{1}{8}$ of the minerals in and under the 141.85-acre tract referred to above, and on the same day Fannie Oten, daughter of Sam and Mariah, joined by her husband, Willie Oten, and Josie Williams, surviving wife of Sam Williams, Sr., conveyed to G. M. Rowe $\frac{1}{16}$ of $\frac{1}{8}$ of the mineral interest in and under the 141.85 acres of land. The total amount conveyed by these two mineral deeds amounted to $\frac{1}{64}$ of the whole, or 2.20 mineral acres. In the judgment in cause No. 9055, dated November 27, 1933, and referred to above, Ora Mariah, daughter of Robert Williams, was decreed to be non compos mentis, and all conveyances of mineral interest by her were cancelled and held for naught, thus reducing the amount of minerals conveyed by the heirs of Robert Williams $\frac{1}{4}$, and reducing the total mineral acres conveyed by both deeds to 1.92. On August 16, 1935, the grantors in these mineral deeds (except Ora Mariah, non compos mentis, and Josie, surviving wife of Sam Williams, Sr.) joined by Ida, surviving wife of Robert Williams, executed correction deeds to G. M. Rowe by which it was sought to change the fractional mineral interest of $\frac{1}{8}$ of $\frac{1}{8}$ conveyed in the original deeds to $\frac{1}{16}$ each, making $\frac{1}{8}$ of the whole mineral estate in and under the 141.85-acre tract. It is observed, however, that

after December 31, 1930, the date of the original mineral deeds to Rowe, and before August 16, 1935, the date of the corrected deeds, the grantors therein had conveyed to other persons more than 100% of the mineral estate owned by them originally. Thus it will be seen that the deeds of correction conveyed nothing and the interest of G. M. Rowe, grantee in the said original mineral deeds, was not increased to any extent thereby. So as we view the record before us, Rowe could convey no greater interest than 1.92 acres of minerals to appellant, and appellant could convey no more to appellee than the interest conveyed to it by Rowe which constituted its entire holding under the 141.85-acre tract. This, from the undisputed evidence, constitutes a shortage in acreage even greater than that alleged by appellee in his pleadings, and as claimed by him in his brief and as found by the jury. However, appellee is making no complaint respecting this fact and certainly appellant is in no position to do so. These propositions are overruled.

Appellant's third proposition is: "The purchase by Shipp being a royalty purchase as distinguished from a land purchase, and the plaintiff Shipp having failed to introduce any evidence on the issue of oil production, or likelihood of production or existing wells and how many, if there be any; or how much royalty money he had received from oil purchases as distinguished from what he had paid for the royalty, he failed to prove any damage, or prove any facts that might be squared with the recognized legal measures of damage and therefore it was material reversible error for the trial court to instruct in favor of Shipp and against Dunber Royalty Company."

We think it pertinent here to observe that the same rules of law which govern the sale of land apply equally to the sale of oil, gas and other minerals in place. Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Stephens County v. Mid-Kansas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843. This case, as we view it, is one simply for damages for partial failure of title to an undivided mineral estate sold appellee by appellant, and is governed by the same rules applicable to partial failure of title to land.

The mineral interest here involved was an undivided interest in and under the entire 141.85-acre tract, and appellee's alleged shortage was in and under the entire tract and applied to every acre contained in said tract of land. Hence the measure of damages applicable here "is that the vendee [appellee] can recover only such part of the original purchase price as bears the same ratio to the whole consideration that the value of the land [minerals] to which the title has failed bears to the value of the whole premises, such relative values to be ascertained as of the time of the conveyance instead of the time of the trial, together with interest * * *. Thus the damages recoverable for a breach resulting in a partial loss of estate cannot exceed the amount of the consideration" paid for such shortage. 21 C.J.S., Covenants, p. 1012, § 142, par. (2). In George v. Hesse, 100 Tex. 44, 93 S.W. 107, 108, 8 L.R.A., N.S., 804, 123 Am.St.Rep. 772, 15 Ann. Cas. 456, Chief Justice Gaines tersely states: "If the plaintiff recovers a sufficient sum in money to make that which he has received equal to that which he has conveyed, and that which he has assumed to pay, he is compensated for his loss, and, as we think, that is the measure of his damages." See also 7 R.C.L. p. 1170, § 87. The trial court aptly applied the above rule and rendered judgment for appellee for that amount of money which represented the purchase price paid by him for the alleged shortage of mineral acres. This proposition is overruled.

Appellant filed a plea in abatement and also claimed an estoppel against appellee, based upon a judgment in the suit styled Shipp v. Humble Oil & Refining Co., in which Shipp and others sued the Humble and others, including appellant, for the title to an undivided interest in the minerals in and under the 141.85-acre tract. That cause was tried to judgment in the District Court of Rusk County, and on appeal was affirmed. Kennedy v. Shipp, Tex.Civ.App., 135 S.W.2d 204, writ dismissed. There is no showing in this record that the mineral interest involved in that case was the same as that under consideration here. Without such showing these pleas are without merit. The action of the trial court in overruling them is sustained.

830

We have carefully examined all other assignments brought forward and conclude that they do not present error, and they are therefore overruled.

The judgment of the court below is affirmed.