**JINKS et al. v. WHITAKER.**

No. 6210.

Court of Civil Appeals of Texas. Texarkana.

May 13, 1946.

Rehearing Denied June 13, 1946.

Clyde H. Hall, of Longview, for appellants.

James & Lee, of Tyler, and Fred Whitaker, of Carthage, for appellee.

HALL, Chief Justice.

This is an action in trespass to try title brought by Della Jinks, a widow, and her six children against appellee concerning a tract of 131 acres of land located in Panola County, to cancel certain mineral deeds from appellants to appellee, one for ¼ and the other for ½ of the minerals in and under the tract of land because of fraudulent acts and conduct of appellee in their execution and for money received by appellee from the sales of the leasehold and mineral interests in said land amounting to approximately $6,900. It was alleged in this connection that at the time of the purported sales of the leasehold and mineral interests by appellants to appellee, he was their attorney representing them in clearing the title to this tract of land, and on that account his acts with respect to said transactions were presumed to be fraudulent. Appellee answered by general denial, plea of not guilty, and special averments denying the charges of fraud alleged against him. Answering further, appellee alleged that he purchased the leasehold on this tract of land from appellants for an agreed consideration of $10 per acre before he was employed to represent them in the litigation concerning the title to the land; also that the mineral interests were conveyed to him by appellants as a fee to represent them in the litigation found to be necessary to clear the title to the land, and for money expended by him in buying out certain interests against same.

Nine special issues were submitted, and the jury's answers were favorable to appellee. Upon motion made by him judgment was rendered in his behalf by the trial court. Appellants' motion for judgment non obstante veredicto was overruled.

Appellants' Point 2 is as follows: "Since the undisputed evidence showed appellee's only possible claim to the minerals was under deeds executed to him by his clients during the time he was representing them and no facts concerning such transactions were disclosed to his clients by appellee and no attempt was made by him to show such deeds were fair, reasonable and just, the court should have instructed a verdict for appellants."

In March, 1944, appellee purchased from appellants an oil and gas lease on the 131 acres of land in Panola County at a price of $10 per acre. Shortly thereafter he learned that the title to said land was defective in that there was a claim being asserted by certain parties, referred to herein as "the Jones heirs," to $^{15}/_{16}$ of the minerals in and under the land, and that there was a suit then pending in Harris County by the Federal Land Bank against appellants seeking the foreclosure of a deed of trust lien held by it against said land in which the Jones heirs were made parties. Appellants employed appellee, who is a regular practicing attorney, to clear the title to the mineral estate and prevent a foreclosure of the Federal Land Bank's lien. As a fee for his services appellants executed and delivered to him a deed to a ¼ of the minerals. Appellee made several trips to Houston in respect to the foreclosure suit and was successful in preventing a foreclosure of the lien but was unable to secure a default judgment against the Jones heirs, who had not answered in that suit, and it became necessary to purchase the heirs' asserted interest therein. When appellee was first employed by appellants to prevent the foreclosure and recover for them the Jones heirs' interest in the minerals it is appellee's contention that his employment contemplated only a

default judgment against the Jones heirs. Appellee's testimony with respect thereto follows:

"Q. What agreement did you make with him then with reference to that employment? A. This property didn't have a great deal of value, but I told him if he agreed to give me ¼ the minerals, I would undertake to handle the matter in Houston for ¼ the minerals and still go ahead and buy the lease if the title was merchantable.

"Q. He agreed to give you ¼ for getting that back. A. Yes; if I could do it without a lot of litigation."

Judgment was not obtained against the Jones heirs in the land bank suit and it became necessary to buy them off and institute suit in Panola County against Pace and Young who were also asserting some claim to the minerals, to clear the title to the mineral estate. With respect to the execution and delivery of the mineral deed by appellants to appellee covering one-half of the minerals as a fee for instituting suit against Pace and Young and as remuneration for appellee's purchase of the Jones heirs' interest, appellee testified:

"Q. Mr. Whitaker, at the time you asked the Jinks heirs to execute the mineral deed dated the 9th of January and acknowledged from the 6th to the 10th, what did you tell them the purpose of that deed was? A. At that time I understood we could buy in the interest owned by the Jones heirs or a part of them, and if not, there was going to ensue a suit requiring a good deal of work to be done, and I had told them I would not take the case and handle it for one-fourth of the minerals. At the time I took the case the minerals were worth $10.00 per acre. I had already gone to Houston several times and I was not willing to undertake this litigation or buy this interest unless they agreed to pay me more of the minerals. Albertus said— offered to give me all the minerals if I would save their land, and I told him I thought I could do it for less, and I told him I would do it for one-half if he would raise the money and pay the Jones for their claim, for a quit claim deed, he already paid me enough, so he could keep

them and I would go ahead and take the lease and pay it off as I agreed to.

"Q. Concerning the mineral deed, that was the explanation you gave him? A. Yes; I told him if I took my money and buy this interest, I would have to have more of the minerals."

Appellee paid for the Jones heirs' interest taking the deeds in the names of appellants and compromised the suit of appellants against Pace and Young, each party to said suit receiving one-half of the minerals received and the oil and gas lease owned by appellee. About the same time appellee assigned the oil and gas lease to Pace, Young having been dropped from the case as having no interest, receiving therefor the sum of $3,000. The above is substantially appellee's theory of the case as shown by the record. Appellants' testimony is to the contrary, and follows substantially their pleadings above referred to.

The jury found that:

(1) Appellants did not employ appellee to sell for them the oil and gas lease covering the land in controversy;

(2) Appellee did not agree to receive as compensation for making the sale of the oil and gas lease for appellants ¼ of the profits from such sale after having paid off the Federal Land Bank's lien;

(3) Appellee did not agree to clear the title to the land in controversy for an undivided ¼ interest of the oil, gas and other minerals cleared by appellee for appellants;

(4) Appellee did not represent to appellants at the time they executed and delivered to him the mineral deed to one-half of the minerals that same was necessary in order to clear up the Jones heirs' claim;

(5a) Appellee purchased the oil and gas lease from the appellants prior to the time he was employed by them as their attorney;

(5) Appellants sold to appellee the oil and gas lease for an agreed consideration of $10 per acre;

(6) It was agreed between appellants and appellee that the consideration for

said lease was to be applied by appellee first to the satisfaction of the Federal Land Bank's debt;

(7) It was agreed by and between appellants and appellee when they first employed appellee that the one-fourth of the minerals conveyed to him was to constitute his fee for representing them in the suit which had been filed against them by the Federal Bank of Houston;

(8) The deed covering one-half of the minerals under the land in question, executed by appellants, was an additional remuneration to appellee for clearing the title to the minerals claimed by the Jones heirs, either by suit, purchase, or by both.

It will be noted that the first four issues cover appellants' case as pleaded and proved by them, while the last five issues are responsive to appellee's defensive averments and proof. Each special issue was answered favorably to appellee. No objection to the issues submitted was made by appellants nor were any other issues requested. It is appellants' contention that the evidence is insufficient to support this verdict, based upon the theory advanced in their Point No. 2 set out above, and that the trial court erred in overruling their motions for an instructed verdict and for judgment non obstante veredicto, timely made. We do not agree with this contention. The record shows that some of the issues, at least, were sharply contested and disputed. This is undoubtedly true with respect to the issues covering the time and purpose of the execution of the oil and gas lease and the purpose of the deed to the ¼ interest in the minerals. With respect to the lease the appellants contend that they employed appellee to sell the oil and gas lease for them; that he was to apply the proceeds from such sale first to the payment of their indebtedness to the Federal Land Bank and the remainder to be divided ¾ to them and ¼ to appellee. Appellee strenuously denied this contention and asserted that the appellants sold the oil and gas lease to him for an agreed price of $10 per acre. In our opinion a like situation exists with respect to the other issues submitted and while the evidence supporting them may not be as clear-cut and forceful as that relating to the execution of the oil and gas lease, still we think in the condition of this record it is sufficient to support the jury's findings. Granting, however, for the sake of argument that the evidence was not sufficient to support some of the above issues, it was amply sufficient to support the other issues submitted and for that reason appellants' motion non obstante veredicto is unavailing. Such motion was directed to the verdict in its entirety and not to any particular issue. Under such circumstances the trial court would not be required, nor would it be justified, in disregarding any particular issue submitted. A motion non obstante veredicto will reach the verdict as a whole but not its objectionable component parts. It finds its basis in the proposition that no issue of fact was raised by the evidence and that an instructed verdict would have been proper at the close of evidence. A motion to disregard one or more special issues, but not the whole verdict, must be directed to the objectionable special issues and point out the reason or reasons why they should be disregarded. This is clearly the meaning of Rule 301, Texas Rules of Civil Procedure, wherein it is provided: "That upon [proper] motion and reasonable notice the court may render judgment non obstante veredicto *if a directed verdict would have been proper,* and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence." (Italics ours.) Edmiston v. T. & N. O. R. Co., 135 Tex. 67, 138 S.W.2d 526; Hines v. Parks, 128 Tex. 289, 96 S.W.2d 970; Fidelity & Casualty Co. of New York v. Maryland Casualty Co., Tex.Civ.App., 151 S.W.2d 230; Johnson v. Stickney, Tex.Civ.App., 152 S.W.2d 921.

■ After a careful reading of the entire record we are not prepared to say that the special issues do not find support in the evidence. It matters not that we or the trial judge might, with the same testimony before us, have rendered a verdict contrary to that arrived at by the jury. A trial judge is duty bound to enter judgment following the jury's verdict

with power to set it aside upon proper showing on motion for new trial. Armstrong v. Hix, 107 Tex. 194, 175 S.W. 430. Point No. 2 is overruled.

Appellants' Point No. 5 is: "Since appellee alleged the mineral deed to one-half of the minerals was given to reimburse him for money expended, the court erred in submitting Question No. 8."

■ This interest was conveyed to appellee by appellants just a few days before the entry of the agreed judgment in the Pace and Young suit on January 15, 1945. Appellee alleged that the deed to the one-half mineral interest was executed by appellants and delivered to him "to offset the purchase with defendant's (appellee's) own funds of the interest which he purchased from the Jones heirs." Special Issue No. 8 reads: "Do you find from a preponderance of the evidence that the plaintiffs (appellants) executed the deed conveying one-half of the minerals under the land in question to the defendant (appellee); that said deed was executed as an additional remuneration to the defendant for clearing the title to the minerals claimed by the Jones heirs, either by suit, purchase, or by both?" This issue follows the pleadings of appellee and went further and included the term, "either by suit, * * * or both." As stated above, none of the issues were excepted to by appellants. In our opinion this issue was proper and was in substantial compliance with appellee's pleadings. Especially is this true in the absence of an exception, timely made, pointing out specifically the defects claimed by appellants. R.S. Article 2237, Sec. 3; Rule 372, Section (d), Texas Rules Civil Procedure; Rivers v. Westbrook, Tex.Civ.App., 126 S.W.2d 46; McWilliams v. Hailey, Tex.Civ.App., 95 S.W.2d 985 (error dismissed), and authorities there cited. This point is overruled.

■ The judgment entered in the trial court in this case is a take nothing judgment against appellants. In our opinion it strips them of all mineral rights to the land in controversy. We think this is manifestly contrary to the undisputed record and the unequivocal admissions of appellee.

At the inception of appellee's employment by appellants as their attorney to represent them in the Federal Land Bank litigation in Houston, they owned all the minerals in and under this land subject to the asserted claim of the Jones heirs and the oil and gas lease theretofore executed by them in favor of appellee. Appellee admitted in his testimony that appellants owned a ¹⁄₁₆ of the minerals on the date of the trial of this case and also makes the same admission in his brief filed herein. Appellee also testified that appellants offered to convey to him all their mineral interest at the time they executed the conveyance of the one-half mineral interest in January, 1945, "if I would save their land, and I told them I could do it for less." On the date the litigation between appellants and appellee as plaintiffs on the one hand and Pace and Young as defendants on the other was settled, appellee at most by his two mineral deeds owned ¾ of the minerals in and under this land and appellants owned ¼. The agreed judgment entered in the Pace and Young case provided that appellants and appellee, as plaintiffs, and Pace, as defendant, each, were to receive one-half of the minerals and. appellee the surface. The agreed judgment then would divest out of appellants, as plaintiffs, in that case, one-half of their ¼ interest in the minerals, which they unquestionably owned, and would divest out of appellee as their coplaintiff one-half of the ¾ interest in the minerals which he owned when the settlement was consummated. So, under the terms of the agreed judgment Pace would own ⁸⁄₁₆, or one-half, appellee ⁶⁄₁₆ and appellants ²⁄₁₆ of the minerals, subject to the oil and gas lease outstanding. This is the clear meaning of that judgment. To construe it otherwise would be to convict appellee, appellants' attorney in the Pace and Young case, of similar conduct to that described by the late Justice Neill in Henyan v. Trevino, Tex.Civ.App., 137 S.W. 458, 480 (writ refused) wherein he states: "By and through a compromise of the suit he acquired a certain part of the premises in controversy; and showed himself more diligent than Horace Greeley's western attorney,

retained on a contingent fee of half of the proceeds of a note he undertook to collect, who, upon collecting half of it, wrote to his client, 'I have collected my half, but the old galoot won't pay your half.'" Appellee as attorney for appellants in the Pace and Young case certainly would not be justified in taking all of his clients' interest in the minerals and giving it to Pace in order to make up Pace's one-half, which he was to receive under the agreed judgment. Equity imposes upon an attorney a sacred duty to use the utmost fairness in dealing with his clients' property, and this is doubly true when, as in the settlement of the Pace and Young case, the attorney's and clients' interests clash. Therefore, we have concluded that the judgment of the trial court should be modified so as to give appellants ⅛ of the minerals in and under the land in controversy, subject to the oil and gas lease now owned by Edward Pace, and as so modified the judgment should be affirmed, and it is so ordered.

We have examined all other points advanced by appellants and have concluded that the questions presented have been settled by a jury verdict, adversely to them, and they are overruled.

Modified and affirmed.