**L. D. FRENCH et al., Appellants,**

**v.**

**BANK OF the SOUTHWEST NATIONAL
ASSOCIATION, HOUSTON, Trus-
tee et al., Appellees.**

**No. 15120.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Nov. 30, 1967.

Rehearing Denied Dec. 21, 1967.

2

H. Cecil Baker, Rosenberg, W. G. Walley, Jr., Beaumont, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Alton F. Curry, Houston, for appellee Bank of the Southwest National Association, Houston, Trustee.

Pollan & Nicholson, John T. Nicholson, Rosenberg and Erwin, Wagner & Hodson, Fred W. Hodson, Jr., Houston, for appellees L. B. Rowsey & C. R. Whelchel.

COLEMAN, Justice.

This is a suit to recover the value of a fractional part of the oil produced by natural flow from a certain leasehold estate with an action over for damages against the warrantors of title.

Appellee, Bank of The Southwest National Association, Houston, Trustee, brought suit against appellant, L. D. French, and Gulf Oil Corporation, to recover the value of 1/8th of 7/8ths of the oil produced by natural flow from the Luscher Lease between October, 1958, and March 31, 1962, which was not delivered to Gulf for the account of the trustee, i.e., 1/16th of 7/8ths of all oil produced by natural flow, appellee having received payment of 1/16th of 7/8ths of all oil produced from said lease as royalty owner of 1/16th of 7/8ths of all oil produced by artificial lift from the lease.

L. D. French, Jr., an assignee of a portion of the interest of L. D. French, was made a party defendant and his posture in the case is the same as that of L. D. French.

Appellant French denied appellee's claim, pled estoppel and the two year statute of limitation, and filed a cross-action against his assignors of the working interest, Southern Oil Well Service Company and others (hereinafter referred to as cross-defendants), for recovery of damages for partial failure of title or breach of covenants.

The case was tried to a jury, and the trial court, after disregarding certain of the answers to the special issues, entered judgment on the remaining issues for the trustee against French and Gulf Oil, and for French against cross-defendants. Only French filed a motion for new trial, and appealed to this Court.

Appellant first contends that the trial court erred in granting judgment to the trustee for the reason that it failed to prove its ownership of the fractional overriding royalty interest in oil produced by natural flow, but on the contrary proved that this royalty was owned by Mills Bennett Production Company.

The undisputed proof established that the trustee's title to the royalty interest and appellant's title to the working interest in the Luscher Lease were derived from and originated out of the same common source by assignment from Mills Bennett to Cecil Hagen dated July 1, 1946. The Mills Bennett assignment expressly reserved to Mills Bennett a royalty of 1/16th of 7/8ths of all oil, gas or other minerals produced from wells on said lease by artificial lift, and a royalty of 1/8th of 7/8ths of all oil, gas or other minerals produced from wells on the lease by natural flow. In April, 1947, Mills Bennett assigned the reserved royalty interests by royalty deed to Cecil Hagen, who, thereafter, assigned to the Bank as trustee. The working interest in the lease was assigned by Cecil Hagen to other parties, and was acquired by cross-defendants in 1951 and 1952. Cross-defendants assigned to appellant in 1958. Each of the assignments of the working interest down through cross-defendants expressly was made subject to the royalty interest reserved in the Mills Bennett assignment to Cecil Hagen. All of the assignments in appellant's chain of title were duly recorded.

In addition to tracing the chain of title of both the trustee and appellant back to the common source, Mills Bennett, appellee introduced into evidence the original lease out of the landowners, i.e., the Luscher Lease, dated April, 1934, to Mills Bennett Production Company. This lease was referred to in each of the assignments in both appellee's and appellant's chain of title, down to and including the assignment to appellant, as the original lease covering the tract, or some similar phrase. This lease was introduced without limitation of purpose and constitutes the basis of appellant's argument that as a matter of law the evidence establishes that title to the lease is in the Mills Bennett Production Company, and not in either the Bank as trustee, in case of the overriding royalty, or in himself, in respect to the remainder of the working interest.

■ The Bank, as trustee, derives its title or claim to the royalty interest at issue

from the reservation of royalty found in the assignment of the Luscher Lease from Mills Bennett to Cecil Hagen. Appellant's title, ownership and claim herein is by virtue of receiving a subsequent assignment of the working interest under Cecil Hagen. Therefore, the question presented is not whether Mills Bennett had good title and conveyed good title to Cecil Hagen and reserved or excepted to himself good title to the royalty interest, but, instead the question is whether the parties to the assignment and those claiming under them are bound, as between themselves, by the recitals and provisions of the assignment. The Bennett-Hagen assignment is contractual in nature, setting out the agreement of the assignor and assignee as to what the interests, rights and obligations of said parties shall thereafter be with respect to the mineral estate with which the instrument deals. The recitals in the assignment define the character and extent of the ownership and interests of the parties in the land affected by the instrument. The reservation of the overriding royalties is binding and effective as between Bennett and Hagen and those in privity with them, and it was not necessary to show that the title to Mills Bennett was good. The fact that the lease from the landowners to Mills Bennett Production Company was introduced into evidence without limitation did not constitute a bar to a recovery by appellee. Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626 (1941); Bernard River Land Development Co. v. Sweeny, 216 S.W.2d 597 (Tex.Civ.App., Galveston, 1948, n. r. e.).

By the third and seventh points of error appellant questions the action of the trial court in failing to sustain its defense of the two year statute of limitation. It is appellant's contention that, properly construed, the petition of the trustee alleged an action against appellant for the conversion of personalty—oil severed from the soil. If such is the case, no recovery could be had for any conversion of such oil occurring prior to two years before the institution of this suit. Marathon Oil Co. v. Gulf Oil Corp., 130 S.W.2d 365 (Tex.Civ. App., El Paso, 1939, rev'd in part Gulf Oil Corp. v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711 (1941); Brooks v. Temple Lumber Co., 105 S.W.2d 386 (Tex.Civ.App., Beaumont, 1937, n. w. h.); Kirby v. Hayden, 125 S.W. 993 (Tex.Civ.App., 1910), aff'd Houston Oil Co. v. Hayden, 104 Tex. 175, 135 S.W. 1149.

■ Appellee pled that by the assignment from Mills Bennett to Cecil Hagen, Hagen agreed to deliver the reserved royalties to Bennett along with Hagen's production into any pipe line with which said wells were connected; that this covenant was binding on appellant as a subsequent assignee of Hagen; that oil was produced by natural flow and delivered to Gulf, who paid appellant the value thereof rather than appellee; that this conduct constituted a breach of the obligation imposed on appellant by the Bennett assignment by reason of which appellant is indebted to appellee for the reasonable market value of such oil. These allegations, as well as other allegations found in the petition of appellee on which the case was tried, show clearly that appellee was relying on the breach of a written contract as grounds for recovery. In such a case the four year statute of limitation was applicable. Ortiz Oil Co. v. Geyer, 138 Tex. 373, 159 S.W.2d 494 (1942, opinion adopted).

The trial court properly disregarded Special Issue No. 2 concerning the market value of the oil attributable to production and sales before two years prior to the institution of the suit and properly entered judgment based on Special Issue No. 1, in answer to which the jury found that the market value of 1/16th of 7/8ths of the oil produced by natural flow from the lease during the period October 1, 1958 through March 31, 1962, to be the sum of $9,587.00.

■ Appellant contends that the trial court erred in awarding interest on this sum from March 31, 1962, rather than from

the date of judgment, December 20, 1966. On March 31, 1962, appellant had in his possession that sum of money, which the jury found to be $9,587.00, representing the proceeds of the sale of 1/16th of 7/8ths of all the oil produced from the lease by natural flow. The oil was sold to Gulf Oil Corporation as required by the contract, but the purchase price was paid to appellant. Appellee was made whole by the judgment for the value of the oil, plus interest for the period during which the money was withheld from appellee by appellant. The interest was awarded as damages in accordance with the prayer found in appellee's petition. While it may well be that properly the amount of interest awarded as damages should have been calculated and recited in the judgment as a lump sum, and then interest awarded on the total amount until paid, this is not the error of which complaint is made, and in this case the error, if any, is not harmful. Rule 434, Texas Rules of Civil Procedure; Simmons v. Wilson, 216 S.W.2d 847 (Tex.Civ.App., Waco, 1949, n. w. h.).

Appellant has presented certain points of error with reference to that portion of the judgment awarding him judgment over against the cross-defendants. A statement of part of the pleadings is necessary.

Upon being sued by the Bank, L. D. French (appellant) instituted a third party action against Edmond D. LeBouf and Gerald Eversole, a partnership, doing business as Southern Oil Well Service Company, and Luther B. Ramsey, G. W. Hunt, and C. R. Whelchel. Appellant alleged that the cross-defendants had assigned to him, for the total consideration of $130,000.00, a net .695313 of the oil, gas and mineral leasehold estate in the lands involved in the suit instituted by the Bank, together with certain personal property. He alleged that in the assignment in writing, the cross-defendants expressly covenanted:

"(1) To forever defend all and singular, the said property interests and rights unto the Assignee, his heirs and assigns against every person whomsoever claiming or to claim the same or any part thereof (not just lawfully claiming or to claim the same or any part thereof);

"(2) That they were the lawful owners of the above-described oil, gas and mineral leasehold estate (in the Luscher Lease) and working interest and personal property, and all rights, titles, interests and estates thereunder;

"(3) That the leasehold estate conveyed consisted of not less than .695313 of the oil, gas and other minerals in, or that may be produced from, the land involved;

"(4) That all rentals and royalties were fully paid, the lease was in full force and effect;

"(5) That Cross-defendants had good right and authority to sell the mineral estate and personal property; and

"(6) That the mineral leasehold estate and personal property were free from 'any overriding royalties or production payments, liens, encumbrances, claims, indebtedness, charge or taxes of any type or character."

Such pleading further alleged the institution of its suit by the Bank and the claims made by the Bank against appellant, and that if such claims were sustained appellant would be damaged to the extent of $70,000.00, and prayed for recovery of such damages by reason of the breach of the quoted covenants, together with interest and costs.

■ Appellant first contends that the evidence established a complete failure of title and that he should have recovered the entire amount of the consideration referable to the mineral estate as distinguished from the personal property. This contention cannot be sustained for the reasons already set out. In addition, by the judgment of the trial court appellant was evicted from

only a fractional undivided portion of the leasehold interest he purchased from cross-defendants. So far as the record shows, the only hostile claim asserted against appellant was for the additional 1/16th of 7/8ths of the oil produced by natural flow. Some character of eviction, either actual or constructive, under a superior title must be made before the warrantee has an action against the warrantor on the warranty of title. The existence of a cloud upon a title does not amount to a breach of warranty. Schneider v. Lipscomb County Nat'l Farm Loan Ass'n, 146 Tex. 66, 202 S.W.2d 832, 172 A.L.R. 1 (1947); Schell v. Black, 321 S.W.2d 373 (Tex.Civ.App., Eastland, 1959, no writ hist.).

Cross-defendants conveyed to appellant .695313 of 8/8ths of the oil, gas and mineral leasehold estate with warranties. There has been a partial failure of title. The parties are agreed that if there has been a failure of title less than complete, the evidence establishes that it is as to 1/16th of 7/8ths of the oil produced by natural flow, or .054687 working interest in production from natural flow only. This loss is .078 part of what they bought. It is appellant's position that the loss of part of the production from natural flow, which production is a free royalty, i.e., not burdened with the expense of development and production, is a greater loss or a different loss than would be the loss of the same fractional part of the working interest not a free royalty and not confined to production from natural flow. Appellant contends, therefore, that the proper measure of damages to be applied was that adopted by the Supreme Court of Texas in the case of Hynes v. Packard, 92 Tex. 44, 45 S.W. 562 (1898), and reaffirmed in City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448 (1947), reading: " 'The damages will bear the same proportion to the whole purchase money as the value of the part to which the title fails bears to the whole premises estimated at the price paid.' " In Hynes v. Packard, supra, the Court also said:

"In the case of Raines v. Calloway [27 Tex. 678], above cited, it was sought to recover damages for failure of title to a part of the land embraced in the warranty, and this court said: 'The jury found that there was a failure of title to the 681 acres, and they valued these 681 acres at the average value of the whole amount of land conveyed, whereas the true measure of damages, if there was in fact a failure of title to any portion of the land, would be the actual value of the particular lots or parcels to which there was a failure of title, to be ascertained by their relative value compared with the balance of the land, assuming the price agreed on by the parties as the value of the whole.' The evidence showed that the land conveyed was not of uniform value. The plaintiff alleged in this case that the part of the land to which there was no title, and for which he sought recovery, was 'of little or no value,' from which it was manifest that it was not of equal value with the other land conveyed. No presumption could be indulged that there was equality in value; *and there was no evidence of its value as compared with the balance of the land embraced in the same conveyance;* hence it was error for the district judge to instruct the jury to find a verdict for the plaintiff, and to render judgment thereon canceling the note of the plaintiff in error, declaring the note satisfied. *The court could not, from the evidence, determine what amount of deduction plaintiff below was entitled to on account of the failure of title.* If the land lost was of no value, plaintiff was entitled to nothing, and, if of 'little value,' the amount should have been proved." [emphasis ours]

In Wiggins v. Stephens, 246 S.W. 84 (Tex.Com.App., 1922, judgment adopted), the rule was stated in these words: "In cases where only a part is lost, the rule is modified so as to allow a recovery of such an amount as bears the same ratio to the total consideration as the value of the land

lost bore to the value of the whole tract or tracts at the date of the warranty."

■ In Tyler v. Gonzales, 189 S.W.2d 519 (Tex.Civ.App., Waco, 1945, ref., w. m.), the court stated that the proper measure of damages in the case of a partial failure of title was aptly stated in 61 A.L.R., p. 90, as follows:

"The damages recoverable are relative or comparative, the standard being the consideration or price paid for the whole tract. Thus, there must be an apportionment, based upon the relative value of that portion to which title failed to that portion to which title proves good. This can be determined only by showing the price paid for the whole, the value of the lands lost, and the value of the lands preserved."

The trial court submitted to the jury Special Issues Nos. 3, 4, 5 and 6, reading:

SPECIAL ISSUE NO. 3

"From a preponderance of the evidence what do you find to be the amount of damages, if any, sustained by the cross-plaintiff, L. D. French, by reason of the failure of title to 1/16th of 7/8ths royalty interest in the oil, gas and mineral estate described and reserved to the assignor in Plaintiff's Exhibit No. 3?

"ANSWER: $35,000.00

"In connection with the foregoing special issue, you are instructed that the measure of damages to be applied therewith is the actual value of such 1/16 of 7/8 royalty interest mentioned to be ascertain by its relative value compared with the balance of the whole 0.695313 oil, gas and mineral estate described in Plaintiff's Exhibit No. 8, on April 1, 1958.

"You are instructed that the price paid by L. D. French to Cross-Defendants for the 0.695313 oil, gas, and mineral estate

described in Plaintiff's Exhibit No. 8 was the value of said oil, gas and mineral estate.

SPECIAL ISSUE NO. 4

"From a preponderance of the evidence, what do you find to be the price paid by L. D. French for the .695313 of 8/8 oil, gas and mineral working interest and leasehold estate in and to the lands in the Thomas Habermacher Survey, Fort Bend County, Texas, described in the assignment and bill of sale of March 22, 1958, from Southern Oilwell Service Company et al to L. D. French (Exclusive of the price paid for the personal property and equipment)?

"Answer in dollars and cents, if any.

"ANSWER: $36,582.00

SPECIAL ISSUE NO. 5

"What do you find, from a preponderance of the evidence, to be the price paid by Cross-plaintiff, L. D. French, for the personal property, oil wells, gas wells, and all oil and gas well supplies, machinery derricks, buildings, flow lines, tanks, casings, christmas trees, tubing, rods, pipes and fillings, meters, pumps, tools, valves, gauges, equipment an appurtenances of every sort and character (exclusive of the leasehold estate) described in the assignment and bill of sale dated March 22, 1958, from Southern Oilwell Service Company and others to L. D. French?

"Answer in dollars and cents, if any.

"ANSWER: $54,418.00

SPECIAL ISSUE NO. 6

"From a preponderance of the evidence, what do you find was the reasonable expectation of the percentage of production of oil, gas and other minerals from the Luscher Lease to be produced by

natural flow as of March 22, 1958, for the life of the lease?

"Answer giving percentage, if any.

"ANSWER: 25%"

 On motion the trial court disregarded Special Issue No. 3 and the answer made thereto. His action in so doing can be sustained only if there was no evidence to require that the issue be submitted, or if the issue was not material.

On March 22, 1958, the date of the sale by cross-defendants to appellant, there were no flowing wells on the lease. Subsequent to that date two wells were drilled. One produced by natural flow for about 3½ years, and the other produced by natural flow for less than four months. No wells were producing by natural flow on the date of trial. Since 1958 from three to six wells were producing at all times. The month-to-month production from this lease was in evidence.

Appellant tendered Mr. James Wheeler, a consulting geologist, as a witness. He qualified as an expert in making appraisals of oil and gas properties. He had made a study of the Luscher Lease, acquiring all available data on all of the wells that had been drilled on the lease, including location on the land, electrical logs, driller's logs, bottom hole deviation surveys, production testing, dates of completion and recompletion attempts, and production lease records. Among other data he secured and considered the information developed by the drilling of the wells called L. D. French No. 17 and L. D. French No. 18, both of which were drilled after the lease was acquired by L. D. French. From this data he estimated the reserves of oil which could be produced by natural flow. He did not attempt to estimate the total reserves, or the amount of oil which might be produced in the future by artificial lift. He estimated the future market value of the oil produced, and to be produced in the future, by natural flow, after deducting the probable state production taxes to be $470,067.00, and found that the value of 1/16th of 7/8ths of the market price of past and of future production by natural flow to be the sum of $25,707.00.

In answer to a hypothetical question based on his study and a total purchase price of $130,000.00 for the entire .695313 interest, he stated that the value of 1/16th of 7/8ths royalty on flowing oil in comparison to the total purchase price was, at the date of the purchase, $70,000.00. He testified that the flowing production was the most important part of the production; that it contributes more to the pay-out and profitability; that it contributed a great percent of the income through the years that there was flowing oil. This opinion, however, is based on a total purchase price that is not supported by the record, and ignores entirely the value of that part of the mineral estate to which title did not fail. Mr. Wheeler testified as to the actual value of the fractional interest. He compared this value to the total purchase price, which must be presumed to be the market price. Such a comparison has no probative value on the issue of damages. If it should be conceded that some of his testimony has probative value as to the actual value of the interest to which title failed as of April 1, 1958, there is no such evidence as to the actual value of the interest to which title did not fail. Neither is there evidence of the market value of the fractional interest to which title failed. Such evidence is required to enable the jury to determine the proper percentage of the purchase price for which cross-defendants were liable in damages. Hynes v. Packard, supra.

 Since the evidence was not sufficient to require the submission of Special Issue No. 3, the trial court did not err in disregarding the answer thereto.

In answer to Special Issue No. 4, the jury found that appellant paid $36,582.00 for the leasehold estate assigned to him by cross-defendants. The evidence established that appellant lost .078 of the mineral estate purchased. This was an undivided part of

the entire estate purchased. The trial court allowed as damages .078 of $36,582.00. In answer to Special Issue No. 6, the jury found that the probable production from natural flow, as of March 22, 1958 would be 25% of the total production. By cross-point, cross-defendants complain that the trial court erred in disregarding this issue and in failing to reduce the judgment rendered against them in favor of appellant by dividing by four.

Appellant filed a motion requesting the trial court to disregard the jury findings and to enter a judgment in his favor. Cross-defendants filed a similar motion requesting that Special Issues Nos. 3 and 5 be disregarded and that judgment be rendered on the remaining issues, or, in the alternative, that the entire jury verdict be disregarded and a judgment entered in favor of cross-defendants. In none of the motions was the court specifically requested to disregard Special Issue No. 6. A general motion for judgment non obstante veredicto will not authorize the trial court to disregard some of the issues, but not all, for the reason that Rule 301, T.R.C.P., authorizes a motion for judgment non obstante veredicto only where a directed verdict would have been proper. The motion to disregard Special Issues 3 and 5 did not authorize the trial court to disregard Special Issue No. 6 because the motion was not directed to that issue, and, therefore, did not specify the reason why such issue should have been disregarded. The trial court erred in disregarding the answer to Special Issue No. 6, unless such issue was immaterial. Jinks v. Whitaker, 195 S.W.2d 814 (Tex.Civ.App., Texarkana, 1946, writ ref., n. r. e. 145 Tex. 318, 198 S.W.2d 85).

Cross-appellants contend that the mineral estate lost was an undivided interest in the whole estate. It was a percentage of the oil in place and not segregated in fact or in theory from the other oil at the time of purchase. Since this lost mineral interest amounted to 0.078 of the interest purchased, limited to oil produced by natural flow, and since the oil that can be produced by natural flow was found to be 25% of the total, the loss would be .078/4 X $36,582.00, or $713.-35. This argument assumes that the value of a 1/16th of 7/8ths interest in oil produced by natural flow is the same as the value of 1/16th of 7/8ths interest in oil produced by artificial lift. There was evidence that oil produced by natural flow is more valuable than oil produced by artificial lift to the operator of the lease because of the difference in production costs.

Cross-defendants cite us to the case of Dunbar Royalty Co. v. Shipp, 146 S.W.2d 827 (Tex.Civ.App., Texarkana, 1941), where the court said:

"We think it pertinent here to observe that the same rules of law which govern the sale of land apply equally to the sale of oil, gas and other minerals in place. Texas Co. v. Daughtery, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989; Stephens County v. Mid-Kansas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843. This case, as we view it, is one simply for damages for partial failure of title to an undivided mineral estate sold appellee by appellant, and is governed by the same rules applicable to partial failure of title to land. The mineral interest here involved was an undivided interest in and under the entire 141.85-acre tract, and appellee's alleged shortage was in and under the entire tract and applied to every acre contained in said tract of land. Hence the measure of damages applicable here 'is that the vendee (appellee) can recover only such part of the original purchase price as bears the same ratio to the whole consideration that the value of the land (minerals) to which the title has failed bears to the value of the whole premises, such relative values to be ascertained as of the time of the conveyance instead of the time of the trial, together with interest * * *. Thus the damages recoverable for a breach resulting in a partial loss of estate cannot exceed the amount of the consideration' paid for

such shortage. 21 C.J.S. Covenants § 142, par. (2), p. 1012."

We think, however, that in the absence of a finding that the value of the oil produced by natural flow was the same per unit as the value of the oil produced by artificial lift, there being evidence to the contrary, the measure of damages thought applicable by cross-defendants is incorrect. Northcutt v. Hume, 212 S.W. 157 (Tex. Com.App., 1919, holding approved); Allen v. Draper, 256 S.W. 255 (Com.App., Tex., 1923); Mayer & Schmidt v. Wooten, 102 S.W. 423 (Tex.Civ.App., 1907); Gass v. Sanger, 30 S.W. 502 (Tex.Civ.App., 1893, writ ref.).

■ The burden of presenting evidence to sustain a proper measure of damages was on appellant. In this he has failed. No point of error presented by appellant can be sustained. On this state of the record, it would usually be proper to affirm the judgment of the trial court even though an erroneous measure of damages was applied. However, cross-defendants have properly assigned as error the action of the trial court in disregarding Special Issue No. 6 on his own motion. Special Issue No. 6, we have concluded, is not an ultimate issue, but is evidentiary only. The action of the trial court in disregarding this issue, and the answer made to it, could not have affected the judgment to be entered or the legal significance of the verdict. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.Sup., 1966); Smith v. Chase, 405 S.W.2d 450 (Tex.Civ.App., Dallas, 1966, ref., n. r. e.).

Under these conditions the action of the trial court in disregarding the issue on his own motion is harmless error under Rule 434, T.R.C.P., assuming such action to be error because not authorized by the Rules of Civil Procedure.

The judgment of the Trial Court is affirmed.

PEDEN, J., not participating.